Exhibit A to *Hale v. Lee* Complaint



EXHIBIT
5

# IN THE CHANCERY COURT OF DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

AKILAH MOORE, TELISE TURNER, )
and GARY WYGANT, )
        )
     Plaintiffs, )
        )
        )     No. 22-0287-IV
v. )
        )
BILL LEE, Governor, )
TRE HARGETT, Secretary of State, )
and MARK GOINS, Tennessee )
Coordinator of Elections, all in their )
official capacity only, )
        )
     Defendants. )

## AFFIDAVIT OF BETH HENRY ROBERTSON

State of Tennessee )
County of Davidson )

I, Beth Henry Robertson, being first duly sworn, depose and say:

1.    I am over 18 years of age, legally competent to give this affidavit and have personal knowledge of the facts set forth in this affidavit.

2.    I am the Assistant Coordinator of Elections for the State of Tennessee and have held this position since 1995. I am also a license attorney and have been licensed in Tennessee since 1995.

Appendix000313

Document received by the TN Court of Appeals.

3.    The Coordinator of Elections is appointed by the Tennessee Secretary of State, and by law, is to be the chief administrative election officer of the State. Tenn. Code Ann. § 2-11-201(b). A number of the Coordinator's statutory duties, in addition to the execution of all elections in the State, are set forth in Tenn. Code Ann. § 2-11-202. Currently, the State Election Office is staffed with eight (8) full-time employees.

4.    The State of Tennessee has a population of approximately 6,910,840, with approximately 4,466,813 registered voters. The State has 95 counties, and each county has a five-member county election commission. The county election commission appoints an Administrator of Elections who is the chief administrative officer for the election commission and is responsible for conducting elections in that county. To the best of my knowledge, eleven (11) of our 95 counties have only one (1) full-time employee in their election commission office. Additionally, the election commission office in four (4) counties is open less than five full days a week.

5.    There are three major elections held every two years in each of the 95 counties in Tennessee: (1) the County Primary Elections, which are held on the first Tuesday in May, except in Presidential election years, when they are held at the same time as the Presidential Preference Primary on the first Tuesday in March; (2) the County General Election, the State and Federal Primary Elections, and possibly State General Elections for judicial offices, which are held on the first Thursday in August; and, (3) the State and Federal General Election which is held on the first Tuesday after the first Monday in November. The ballot for the August election is generally the largest and most complicated ballot since it includes offices for the County General Election, the State and Federal Primary Election, as well as the State General Election for any judicial offices on the ballot. The August 2022 ballot will include the following offices:

**Federal and State Primary Ballot Offices**
Governor;

Appendix000314

Document received by the TN Court of Appeals.

United States House of Representatives;
Tennessee Senate (Odd Numbered Districts);
Tennessee House of Representatives;
Tennessee Republican State Executive Committeeman;
Tennessee Republican State Executive Committeewoman;
Tennessee Democratic State Executive Committeeman;
Tennessee Democratic State Executive Committeewoman

**State and County General Offices**
Supreme Court Judge (Retention Question);
Court of Appeals Judge (Retention Question);
Court of Criminal Appeals Judge (Retention Question);
Circuit Court Judge;
Chancellor;
Criminal Court Judge;
Probate Judge (Some Counties)
District Attorney General;
Public Defender;
County Mayors;
County Commissions;
Assessor of Property (Some Counties);
County Trustee;
General Sessions Judge;
Juvenile Court Judge;
Sheriff;
Clerks of Courts;
County Clerk;
Register;
Road Superintendents;
School Boards;
Municipal Executive Offices (Some Counties);
Municipal Legislative Offices (Some Counties);
Municipal Judicial Offices (Some Counties)

6.     The deadline for candidates to qualify for the State and Federal Primary Election in August is noon on the first Thursday in April. Tenn. Code Ann. § 2-5-101(a)(1). For this year, that deadline is April 7, 2022. It is my understanding that the Plaintiffs are seeking to have that deadline postponed to May 20, 2022.

7.     With the April 7 qualifying deadline, county election commissions cannot begin to prepare the August ballot until April 21. Under Tenn. Code Ann. § 2-5-204(b), qualified candidates

3

Appendix000315

Document received by the TN Court of Appeals.

have seven days to withdraw from the ballot. During the same time period, the state executive committee for each political party may disqualify primary candidates as not being bona fide members of the party. The deadline for the withdrawal and the disqualification of primary candidates falls on 12:00 noon on April 14. However, the appeal by the disqualified candidate and review process of the state executive committee are not finalized until seven days after the withdrawal deadline, which falls on April 21. Under the Military and Overseas Voters Empowerment Act ("MOVE"), 42 U.S.C. §1973ff-1(8), and Tenn. Code Ann. § 2-6-503(a), county election commissions must send ballots to military personnel and overseas citizens no later than forty-five (45) days before the election. With the current statutory deadlines already mentioned, there are approximately forty-one (41) business days between the time ballots can be prepared and the deadline on which ballots for military personnel and overseas citizens must be mailed out. If the qualifying deadline moves to May 20, the withdrawal deadline moves to May 27 and the political party disqualification process deadline falls on June 3. This postponed schedule gives county election commissions only about 17 days to prepare, review and send ballots to military personnel and overseas citizens.

8. For the August 2022 election, each county must prepare a ballot for each primary and for each type of system they use, e.g., paper ballots for absentee voting, paper ballots for optical scan voting systems, and machine ballots for Direct Recording Electronic ("DRE") voting systems to be used on Election Day and early voting. Thus, for the August election each county has to prepare at least five (5) different types of ballots: paper ballot for the Republican Primary; paper ballot for the Democratic primary; paper ballot for the August general; for DRE counties a machine ballot for the Republican Primary and a machine ballot for the Democratic Primary

4

Appendix000316

Document received by the TN Court of Appeals.

9. Tenn. Code Ann. § 2-5-207(e) provides that once a county has prepared their ballots, a sample ballot is to be sent to our Office for review and approval. This statute specifically provides that no ballot shall be printed, or funds expended therefor by any county until such approval has been granted. When the ballots come to our Office for approval, we have one employee who conducts the initial review of each ballot and then each ballot is double-checked by another employee. Given the number of offices on the ballot, this process will take a substantial amount of time. As noted, for the August election, each county will have to prepare at least five (5) ballots which means that our Office will have to review at least 475 ballots (5 ballots x 95 counties). If there are any municipal elections being held at the same time as the August election, the counties will also have to prepare and we will have to review those ballots, as well. This review and approval process must be completed to prepare the absentee by-mail ballots used for military personnel and overseas citizens. A qualifying deadline of May 20 allowing only about 17 days to review and approve at least 475 ballots by our Office is simply not feasible.

10. Of course, before any of the ballots can be developed, printed, and prepared for mailing to military voters, it must be determined which candidates have qualified, and if necessary, if any political parties have qualified to be a recognized minor party by submitting petitions with the requisite number of valid signatures. This determination requires the State and counties to go through the process of verifying signatures on the petitions. Since voters' permanent registration cards are maintained at the local (county) level, our Office does not do the actual verification of signatures. Instead, we review the petitions, separate out the signature pages by county and then forward them to the appropriate county election offices where the actual verification is conducted by those offices. In verifying signatures, the counties are required to follow the provisions of Tenn. Code Ann. § 2-1-107. Once the counties have finished reviewing and verifying signatures,

5

Document received by the TN Court of Appeals.

they report back the total number of valid signatures and then we determine whether a person has collected enough valid signatures to qualify as a candidate on the August ballot. For U.S. House of Representatives, candidates file the nominating petition with our Office and for Tennessee Senate and House of Representatives, candidates file the nominating petition in the counties. The original petition is filed in the county where the candidate resides, and certified duplicates are filed in each county that is a part of the legislative district.

11. Since February 7, 2022, the first day petitions for the federal and state primary election petitions could be issued, county election commissions have reviewed and changed voting precinct lines based upon the redistricting bill passed by the Tennessee 112th General Assembly. Relying on these district lines, county election commissions have adjusted voting precinct lines and moved street names and voters into legislative districts in accordance with the new district lines. For the district-based offices of U. S. House of Representatives, Tennessee Senate, Tennessee House of Representatives, Tennessee Republican State Executive Committeeman, Tennessee Republican State Executive Committeewoman, Tennessee Democratic State Executive Committeeman, and Tennessee Democratic State Executive Committeewoman, the county election commission, candidates, and voters have relied upon the adoption of these lines to determine whether voter signatures are valid on nominating petitions for the offices that have already been filed.

12. Furthermore, once the county election commissions have established their new precincts and polling places, they are required pursuant to Tenn. Code Ann. § 2-3-105 to immediately publish the new precincts or districts in a newspaper of general circulation in the county and mail to each active voter whose polling place has changed a notice of the voter's new

Appendix000318

Document received by the TN Court of Appeals.

polling place and precinct number. Many of the county election commissions have already sent out these notices to their active voters and/or published this information.

13. This Office (and the county election offices) have many other tasks and duties that we have to perform during this same time period that we are doing what is necessary to get the military ballots ready and sent out. For example, we have to set up an electronic database of the state and federal candidates to assure that the names of the candidates who do qualify and the names of their offices appear the same in each county. This database is necessary in order for us to be able to ensure that the way candidates and offices are listed is consistent, particularly in multi-county districts. The database is also necessary for us to use to approve the ballots when the counties send them in.

14. This Office also spends a considerable amount of time preparing for and training election officials. Tenn. Code Ann. § 2-11-202(a)(9) requires the Coordinator of Elections to provide materials for and conduct training programs for persons administering the election laws. Subsection (18)(A) further requires the Coordinator of Elections to conduct a training seminar for administrators, deputies, and county election commissioners at least once a year. Certified Administrators of Elections must take the time to participate in the annual training provided by the Coordinator of Elections to maintain their certified status. The Coordinator of Elections and members of the Election Division must take time to prepare for and assist in the training for the certified Administrators of Elections. This is done in addition to the daily tasks of responding to phone calls and emails from election officials, voters, candidates, and members of the public.

15. Tenn. Code Ann. § 2-11-202(b) requires the Coordinator of Elections and the State Election Commission to prepare and administer a written examination on election laws at least once a calendar year to any county election administrator seeking certification. I conduct training

Appendix000319

Document received by the TN Court of Appeals.

for new county Administrators of Election who have not taken the state examination. Thus, during this same time period, I am quite busy responding to inquiries (both phone calls and emails) from new Administrators, conducting group study sessions for Administrators sitting for the exam and administering two (2) mock exams for the Administrators sitting for the certification examination. I write the certification exam, the Coordinator of Elections reviews and approves the certification exam, and I, along with other members of the Elections Division, administer and grade the certification exam. This is done in addition to the daily tasks of responding to phone calls and emails from election officials, voters, candidates, and members of the public.

16.     The Coordinator of Elections is also required by law to review all bills affecting the election laws and report in writing to the General Assembly on them individually, as well as report to the General Assembly any recommendations for improvements in the election laws or their application. Tenn. Code Ann. §§ 2-11-202(10) and (11). The legislative session for the General Assembly usually runs from the middle of January to the end of April. Thus, particularly during these months, the Coordinator of Elections, Mark Goins, spends a considerable amount of time reviewing and reporting on election related bills. In addition, anytime an election related bill is being heard in a committee or sub-committee hearing, he has to attend that hearing either in order to testify or to answer questions regarding the proposed legislation. This means that he usually spends at least 2-3 days a week in addressing election legislation.

17.     Additionally, our Office is also charged with administering and implementing the provisions of the Help American Vote Act ("HAVA"). Among other things, HAVA requires that each state maintain a statewide voter registration database. This database is maintained by our Office. However, voter registrations and purges are all handled at the local (county) level. Thus, in order for us to maintain our statewide voter registration database, each county has to transmit to

8

Document received by the TN Court of Appeals.

Appendix000320

us on a daily basis voter registration and purge information so that we can update the database. In addition, we receive information on a regular basis from the State Department of Vital Records concerning deaths of registered voters, as well as information from the federal courts of the convictions of registered voters (counties receive this information from the state courts). These voters have to be purged both from the statewide database and from the local county election office's permanent voter registration records. Additionally, the counties are required to purge the registration of any voter who meets the provisions of Tenn. Code Ann. § 2-2-106, however state law further requires that the counties shall not purge any permanent registration records ninety (90) days before an election. Consequently, we have two staff members working with the counties and assisting in these list maintenance procedures.

18. Further, while the voter registration records of convicted felons are purged upon conviction, state law provides a process for a convicted felon to have his/her voting rights restored. *See* Tenn. Code Ann. §§ 2-2-139 and 40-29-203(d). This process requires that before a county administrator allows a convicted felon to become a registered voter, the administrator must verify with this Office that the person has had their voting rights restored and is eligible to register to vote. Our Office has one employee primarily responsible for dealing with issues involving the restoration of voting rights of convicted felons. That employee spends a considerable amount of time during the period leading up to elections responding to inquiries from county administrators, convicted felons seeking to have their voting rights restored, and those officials who have the authority to complete the certificate of restoration form.

19. We have 74 counties holding a county primary on May 3, 2022. Thus, in the months and days leading up to that date, we will be assisting the counties in conducting that election, and in the days and weeks after the election, we will be busy receiving and compiling the

9

Appendix000321

Document received by the TN Court of Appeals.

certification of election results from the counties, as well as receiving and compiling voter histories from the counties. State law requires that counties must certify their election results by the third Monday after the election, however, most counties try to get their results certified as soon as possible so that they can begin preparing their ballot for the August County General Election.

20. Finally, state law requires that each county provide to our Office a report containing the following information by precinct every six (6) months: beginning and ending numbers for the reporting period of active and inactive voters, new valid voter registrations and purged voters. The report also must include the number of registrations received during the reporting period from the following categories: (1) registered in person with Election Office, (2) Department of Safety, (3) By-mail registration, (4) Public Assistance agencies, (5) state-funded agencies, (6) armed forces recruitment offices, and (7) passive voter registration agencies. Finally, this report must include all duplicate applications received and the number of confirmation notices mailed out and the number of responses received. Tenn. Code Ann. § 2-12-114. The county election commissions are required to file this report with our Office by June 1. Once we receive the reports, we then have to review them and then integrate the information into our database. We then generate a report that is placed on our website.

21. As I have previously stated, based upon my experience, we need the time between the qualifying deadline (April 7) and the deadline mandated by the MOVE Act (June 20) in order for our counties to get their ballots prepared and sent out to our military voters. If the April 7 candidate qualifying deadline were moved to May 20 (or any other date later in the election cycle), we would not be able to comply with the MOVE Act and it would be very difficult for us to have

10

Appendix000322

Document received by the TN Court of Appeals.

everything timely and accurately ready for the August election and early voting.

FURTHER AFFIANT SAITH NOT.



BETH HENRY-ROBERTSON

Sworn to and subscribed before me this 22nd day of _March_____, 2022.

NOTARY PUBLIC

My Commission expires: 1-8-2024

11

Appendix000323

Document received by the TN Court of Appeals.