Exhibit F to *Hale v. Lee* Complaint

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

AKILAH MOORE, TELISE TURNER, and GARY WYGANT,

Plaintiffs,

v.

WILLIAM LEE, as Governor of Tennessee, in his official capacity; TRE HARGETT, as Tennessee Secretary of State, in his official capacity; and MARK GOINS, as Tennessee Coordinator of Elections, in his official capacity,

Defendants.

CASE NO. 22-0287-IV
Chancellor Perkins
Chancellor Maroney
Judge Sharp

## ON APPLICATION FOR EXTRAORDINARY APPEAL FROM THE ORDER OF THE DAVIDSON COUNTY CHANCERY COURT

## <u>EXPEDITED REVIEW REQUESTED</u>

---

## DEFENDANTS' EMERGENCY MOTION TO STAY PENDING EXTRAORDINARY APPEAL

---

Defendants William Lee, as Governor of Tennessee, in his official capacity, Tre Hargett, as Tennessee Secretary of State, in his official capacity, and Mark Goins, as Tennessee Coordinator of Elections, in his official capacity, hereby move this Court to stay the trial court's April 6, 2022 temporary injunction enjoining Defendants from conducting elections for State Senate districts as apportioned by SB 0780 and

1

extending the qualifying deadline for State Senate candidates until May 5, 2022 pending resolution of Defendants' application for extraordinary appeal. *See* Tenn. R. App. 7.

One day before the statutorily-mandated April 7, 2022 qualifying deadline for candidates, the trial court enjoined Defendants from conducting elections for State Senate districts as apportioned by SB 0780 and extended the qualifying deadline for State Senate candidates until May 5, 2022. (*See* App. 370-390.) Defendants have filed, pursuant to Tenn. R. App. P. 10, an application for permission to appeal from the trial court's order.

The trial court's injunction requires Defendants to immediately and drastically modify the already-ongoing procedures for elections. The trial court's order failed to consider or discuss the significant harm that its injunction imposes upon Tennessee county election commissions' federal obligations to provide ballots to military and overseas voters and further ignored the risks of voter disenfranchisement and injury to the integrity of the electoral process.

This Court thus should not wait until final resolution of Defendants' Application for Extraordinary Appeal to prevent these harms—the damage to Tennessee's electoral process would be irreversible absent an immediate stay. Accordingly, pursuant to Tenn. R. App. P. 7, the trial court's injunction should be stayed pending appeal and Defendants respectfully request that this Court expedite its consideration of this motion.

2

## STATEMENT OF THE RELEVANT FACTS AND PROCEDURAL HISTORY

In accordance with the requirements of Art. II § 4, the Tennessee Senate undertook to reapportion the districts for the Tennessee State Senate after the 2020 census. The initial bill, Senate Bill 0780, was introduced on February 9, 2021.[1] On September 17, 2021, the Lt. Governor appointed the members of the Senate Ad Hoc Committee on Redistricting ("Senate Committee"). The Senate Committee established a website and posted information about redistricting as information became available. In particular, the Senate Committee posted Guidelines for the Submission of Senate redistricting plans and set a deadline of November 22, 2021, for submission of proposed plans. (*See* App. 301.)

The Senate Committee ultimately received five plans for consideration. Similar to the House Committee process, counsel for the Senate Committee conducted a standard basic evaluation of each of those plans and those evaluations were provided to the Senate Committee members and posted on the Senate Committee's website. Copies of these evaluations are attached as Collective Exhibit 3. Each of these plans had issues. For example, the Hildabrand plan had an overall deviation of 6.83% and split eight counties, but only had three majority-minority districts (there are four under the 2012 Senate plan) and it switched an

---

[1]The Legislative History is public record, which is accessible at [Tennessee General Assembly Legislation (tn.gov)](#).

even-numbered district with an odd-numbered district. The Lee Plan had an overall deviation of 5.49% but split 19 counties, only had three majority-minority districts and paired 12 incumbents. The Miles Plan had an overall deviation of 8.09%, split 15 counties and only had two majority-minority districts. It also paired six incumbents. The Trivette Plan also had an overall deviation of 8.09% but only split nine counties and had three majority-minority districts. The plan paired twelve incumbents and moved some incumbents from an odd-number district to an even-numbered district, and vice versa. Finally, the Puttbrese plan had an overall deviation of 7.70%, split eight counties and only had three majority-minority districts. (*See* App. 302-307.)

These plans were all considered by the Senate Committee at their public meeting on December 14, 2021. At that same meeting, the Senate Committee considered the plan that had been prepared for the Committee. That plan had an overall deviation of 6.17%, split 10 counties and paired no incumbents. It also had four majority-minority districts—making it the only plan presented to the Senate Committee for consideration which maintained the same number of majority-minority districts under the plan adopted after the 2010 census. The Senate Committee ultimately adopted this plan which became Senate Bill 0780.

Senate Bill 0780 was subsequently referred to the Senate Judiciary Committee and recommended for passage on January 18, 2022. Senate Bill 0780 came before the full Senate for third and final consideration on January 20, 2012. At that time, Senator Yarbro introduced Amendment 2 which presented an entirely new and different plan for reapportionment of the State Senate. The Amendment 2 plan had an

4

overall deviation of 7.7% and split eight counties while pairing no incumbents but it only had three majority-minority districts. That amendment was ultimately tabled, and the Senate voted to adopt Senate Bill 0780. This plan was passed by both Houses of the General Assembly and signed by the Governor as Public Chapter 596.

Nearly two-and-half weeks after the Senate redistricting plan became law, Plaintiffs filed their complaint challenging the constitutionality of the Senate plan. (*See* App. 1-16.) Plaintiffs alleged that the Senate plan violated the Tennessee Constitution by failing to consecutively number the districts in Davidson County. (*See* App. 14, ¶¶ 70-75.) Plaintiffs did not challenge the constitutionality of the statutory provision setting forth the qualifying deadline. (*See* App. 1-16.)

Notably, Plaintiffs did not contemporaneously seek a temporary injunction. Instead, Plaintiffs delayed another two weeks—until March 11, 2022—before filing a motion for a temporary injunction alongside an amended verified complaint. (*See* App. 17-64.)

Defendants opposed Plaintiffs' motion, arguing that the Plaintiffs had failed to demonstrate standing because none of the three Plaintiffs alleged that they resided in the non-consecutively-numbered Davidson County district and because the Verified Amended Complaint and temporary-injunction motion otherwise failed to demonstrate that SB 0780 created a particularized distinct and palpable injury-in-fact for Plaintiffs. (*See* App. 195-240.) Defendants further showed that the April 7, 2022 qualifying deadline was directly tied to the June 20, 2022 deadline for mailing military and overseas ballots, and that enjoining the Senate map and moving the deadline would render county election

5

commissions unable to meet their obligations under federal law. (*See* App. 232-244, 313-323.) Defendants also presented affidavits from county election administrators that changing any deadline for the impending election at this late hour would wreak electoral chaos, risking voter disenfranchisement and compromising the integrity of the electoral process. (*See* App. 324-349.)

The trial court heard Plaintiffs' Motion for Temporary Injunction on March 31, 2022. (*See* App. 370.) As relevant here, the trial court determined that all three Plaintiffs, including Plaintiffs Wygant and Turner—who did not even live in Davidson County—and Plaintiff Moore—who did not allege that she lives in the non-consecutively-numbered district, each had standing to bring their challenge to the Senate map. (*See* App. 377-379.) Furthermore, without any discussion of the undisputed evidence of the significant harm that an injunction would cause to the ongoing electoral process—specifically the testimony of the county election administrators and Assistant State Coordinator of Elections that an injunction would create electoral chaos by leaving county election commissions unable to meet federal deadlines for finalizing ballots and mailing them to military and overseas voters, the trial court temporarily enjoined Defendants from conducting statewide elections for State Senate districts as apportioned by SB 0780 and extended the statewide qualifying deadline for Senate candidates to May 5, 2022. (*See* App. 370-390.)

## ARGUMENT

### I.  Standard of Review

Motions seeking stays or injunctions pending appeal are governed by Rule 7 of the Tennessee Rules of Appellate Procedure, which provides that "[a]ny party may obtain review of an order entered pursuant to rule 62 of the Tennessee Rules of Civil Procedure by a trial court from which an appeal lies to the Supreme Court or Court of Appeals."[2]  Tenn. R. App. P. 7.

Tennessee courts have not articulated a standard for determining when a stay pending appeal is warranted, but federal-court decisions applying analogous rules of procedure are instructive.  Federal courts asked to stay an injunction pending appeal consider the "traditional factors" governing the issuance of injunctive relief: "(1) whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies."  *Baker v. Adams Cty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).

---

[2] Rule 7 also requires a written motion seeking a stay to be first presented to the trial court for relief unless the motion would be impracticable. Tenn. R. App. P. 7.  Defendants have not sought a stay from the trial court because the urgent issue of the impending statutory qualifying deadline and the now-ticking fifteen-day legislative cure period renders any attempt to file a written motion impracticable.  *See* Tenn. R. App. P. 7(a).

7

Here, all of these factors counsel strongly in favor of a stay pending appeal, which would preserve the status quo that existed before Plaintiffs' lawsuit and allow the State to leave in place its existing election procedures until this Court rules on the merits of the appeal.

## II. The Temporary Injunction Should Be Stayed Pending Appeal.

The temporary injunction issued by the trial court imposes drastic logistical burdens upon the state and county election administrators and unnecessarily changes the rules on the eve of an election, risking disenfranchisement of military and overseas voters, imperiling compliance with federal deadlines, and undermining the public's faith in the integrity of the electoral process. The injunction should be stayed because Plaintiffs are unlikely to succeed on their claims due to an evident lack of standing and because the injunction will inflict substantial, immediate, and irreparable harm on the State, its election administrators, and its voters.

### A. Plaintiffs Are Unlikely to Succeed on the Merits Because They Have Not Demonstrated Standing.

"Courts use the doctrine of standing to determine whether a litigant is entitled to pursue judicial relief as to a particular issue or cause of action." *City of Memphis v. Hargett*, 414 S.W.3d 88, 97 (Tenn. 2013). Standing is a prerequisite for judicial consideration of the merits of a claim. *Fisher v. Hargett*, 604 S.W.3d 381, 396 (Tenn. 2020).

"Constitutional standing is a fundamental requirement of a justiciable controversy." *Id.* at 396. To establish constitutional standing, a plaintiff must demonstrate: (1) that the plaintiff has suffered a distinct

and palpable injury, (2) that a causal connection exists between the alleged injury and the challenged conduct, and (3) that the injury is capable of being redressed by a favorable decision of the court. *Id.* Injuries that are "distinct and palpable" are not "conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general citizenry." *City of Memphis*, 414 S.W.3d at 98. "A generalized grievance against allegedly illegal governmental conduct" is insufficient to establish constitutional standing. *United States v. Hays*, 515 U.S. 737, 743 (1995); *see Hamilton v. Metro. Gov't of Nashville*, No. M2016-00446-COA-R3-CV, 2016 WL 6248026, at *4 (Tenn. Ct. App. Oct. 25, 2016) (explaining that "a plaintiff's interest must be different from not only the general public, but also from any large class of citizens") (no perm. app. filed).

Plaintiffs failed to satisfy this fundamental requirement, alleging nothing more than a "generalized grievance" which they share in common with the general citizenry. Plaintiffs challenged SB 0780 for allegedly violating the Tennessee Constitution because the numbering of districts in Davidson County in the 2022 Senate plan was non-consecutive. (*See* App. 30-31, ¶¶ 70-75.) The Amended Complaint did not contain any allegations of a distinct and palpable injury to Plaintiffs caused by that challenged conduct.

With respect to the numbering of Senate districts in Davidson County, none of the Plaintiffs alleged that they live in the non-consecutively numbered district in Davidson County, much less that they have been injured by the numbering of Senate districts in Davidson County. Indeed, it is difficult to imagine that Plaintiffs Turner and

9

Wygant ever could make those necessary allegations. In the context of redistricting challenges, federal courts have routinely held that a plaintiff must reside in the challenged district to establish standing absent specific evidence of some other distinct and palpable injury. *See, e.g., Hays*, 515 U.S. at 745; *Gill v. Whitford*, 138 S. Ct. 1916, 1929-31 (2018). This residency requirement comports with Tennessee's standing requirements. Unless a plaintiff resides in a challenged district or alleges some other distinct injury, there is nothing to differentiate that plaintiff's interest from those shared in common with the general citizenry. *City of Memphis*, 414 S.W.3d at 98. Thus, Plaintiff Turner, who resides in Shelby County, and Plaintiff Wygant, who resides in Gibson County, could never establish standing to challenge the numbering of Senate districts in Davidson County. (*See* App. 21, ¶¶ 14-16.) And neither has alleged any other injury.

While Plaintiff Moore does at least reside in Davidson County, the allegations of the Amended Complaint still failed to establish that she suffered a distinct and palpable injury. Plaintiff Moore does not allege that she resides in a district that is not consecutively numbered. Plaintiffs admitted that Senate Districts 19, 20, and 21 are numbered consecutively; they take issue only with the numbering of District 17. (*See* App. 28, ¶ 59; *id.* 30-31, ¶¶70-75.) Plaintiff Moore did not allege that she resides in Senate District 17 or that the renumbering of that district would in any way impact her in a manner distinct from the general citizenry. Accordingly, none of the Plaintiffs pleaded facts sufficient to establish standing to challenge the numbering of the Senate districts in Davidson County.

So how did the trial court surmount these obvious deficiencies in Plaintiffs' Verified Amended Complaint and Motion for Temporary Injunction? By erroneously bootstrapping Plaintiffs' claims to the fundamental right to vote. In its order, the trial court held that standing is present where "the fundamental voting rights of Tennessee citizens are threatened." (*See* App. 378) (citing *Fisher*, 604 S.W.3d at 396 and *City of Memphis*, 414 S.W.3d at 98-99).

But neither of those cited cases reaches as far as the trial court imagines. *Fisher* involved allowing Tennesseans with medical conditions that rendered them especially vulnerable to COVID-19 to vote absentee during the pandemic—a situation that actually does implicate the right to vote. *See Fisher*, 604 S.W.3d 381. And *City of Memphis* involved voter-identification requirements, which also impact an individual voter's ability to cast a ballot. *City of Memphis*, 414 S.W.3d 88.

But here the right to vote is not implicated at all. There is no dispute that each Plaintiff retains the ability to vote. SB 0780 does not burden Plaintiffs' right to vote—it simply dictates the districts they may vote in. *See, e.g., Arizona Minority Coalition for Fair Redistricting v. The Ariz. Indep. Redistricting Comm'n*, 121 P.3d 843 (Ariz. Ct. App. 2005) (holding that redistricting does not affect the essence of the right to vote).

Neither Plaintiffs nor the trial court cited any authority for the proposition that there is a fundamental right to vote in a consecutively-numbered district. Nor did Plaintiffs assert that they would be injured by voting in a non-consecutively-numbered district. They made no allegations of how residing in a county with districts that are not consecutively numbered would negatively affect their legislative

11

representation. Plaintiff Moore may still vote for whichever candidate she prefers in the district she resides in—and based upon Plaintiffs' prayer for relief, the lines of her district may or may not change regardless of numbering even if her claim was successful. Moreover, based upon representations by Plaintiffs' counsel during the temporary-injunction hearing, she does not even live in the 17th Senatorial District. This, too, deprives her of standing. *See Wilkins v. West*, 571 S.E.2d 100, 107 (Va. 2002) (non-resident lacks standing unless they can allege a particularized injury). Plaintiffs did not even attempt to explain in their Verified Amended Complaint and Motion for Preliminary Injunction how they are harmed by Davidson County's 17th, 19th, 20th, and 21st Senatorial Districts, as opposed to a renumbered 18th, 19th, 20th, and 21st Districts. The trial court's conclusory widening of the holdings of *Fisher* and *City of Memphis* beyond their subject matter warrants immediate reversal.

In sum, the Verified Amended Complaint is completely devoid of any allegations that the challenged Senate map has distinctly injured Plaintiffs. Indeed, in their motion for a temporary injunction, Plaintiffs' only claim of harm was that the 2022 Senate plan is unconstitutional. (*See* App. 60-61.) Without any allegation of a distinct and palpable injury, Plaintiffs failed to establish the fundamental requirement of standing. The trial court thus enjoined Defendants without the necessary subject matter jurisdiction. It ought not to have done so; this Court should grant Defendants' motion and stay the trial court's injunction pending appeal.

12

## B. Plaintiffs Will Not Be Irreparably Harmed.

Plaintiffs also failed to demonstrate irreparable harm—a prerequisite to injunctive relief. *See Moody*, 247 S.W.3d at 199 (explaining that a temporary injunction may be issued only "if it is clearly shown . . . that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action"). To merit injunctive relief, the irreparable injury "must be real and practically unavoidable and certain." *See State ex rel. Agee v. Chapman*, 922 S.W.2d 516, 519 (Tenn. Ct. App. 1995) (citing *J.W. Kelly & Co. v. Conner*, 123 S.W. 622 (Tenn. 1909)). Nor may an injunction be issued "merely to relieve the fears or apprehensions of an applicant." *State ex rel. Baird v. Wilson Cnty.*, 371 S.W.2d 434, 439 (Tenn. 1963). It may only be granted if "the injury is threatened or imminent and, in all probability, about to be inflicted." *Id.*

Plaintiffs' lack of standing, discussed *supra* at 8-12, also demonstrates that they will suffer no irreparable harm absent an injunction. The Amended Complaint and instant motion are devoid of any allegations that the challenged maps will irreparably harm Plaintiffs absent an injunction. Accordingly, a stay is appropriate here as the Plaintiffs will not suffer irreparable harm absent an injunction.

## C. The Trial Court's Injunction Causes Significant Harm to Defendants and is Contrary to the Public Interest.

The trial court declined to consider the harm to the Defendants and the damage to the public interest that its injunction creates. Consideration of the harm to the Defendants and public interest is not

13

optional—the trial court should have discussed and considered these factors but did not. And the harm caused by an injunction on the eve of an election is plain. The undisputed evidence in the record shows that postponing the qualifying deadline risks noncompliance with federal law, disenfranchisement of military and overseas voters, and could well compromise the integrity of the impending election.

Here, the election process for members of the State House of Representatives and Senate is well underway. Qualifying petitions for candidates for the general Assembly began to be issued on February 7, 2022. The statutorily-mandated qualifying deadline for candidates is April 7, 2022, the withdrawal deadline is April 14, 2022, and the deadline for appeals of political-party decisions to remove candidates from the ballot is April 21, 2022. To qualify, a candidate must present a petition to the county election commission containing the signatures of twenty-five registered voters *in the district.* Candidates cannot obtain those signatures unless they know where the district boundaries are. Indeed, most candidates have already qualified in their districts and have begun fundraising and campaigning. The trial court changed the rules in the middle of the election.

And while it may be superficially appealing to believe that changing district numbering may not require changing district lines, redistricting is a complex process. The argument that numbers can simply be shifted neglects that changing an even-numbered district to an odd-numbered district (or vice versa) must consider that elected representatives are constitutionally entitled to serve their entire term of office. *See* Tenn. Const., art. II, § 3. Shifting district numbers even in isolation could result

14

in a state senator running for re-election halfway into their term. The trial court should have, but did not, consider this harm to Defendants and the public interest.

Federal law underscores the harm that can befall a State when its redistricting maps are enjoined on the eve of an election. The Supreme Court has repeatedly recognized the States' compelling interest in preserving the integrity of their election process. *See, e.g., Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). In *Purcell v. Gonzalez*, 549 U.S. 1 (2006), the Supreme Court recognized that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4-5. The proximity of an impending election increases this risk. *Id.* at 5. Accordingly, courts are cautioned not to change the rules on the eve of an election. *See Veasey v. Perry*, 574 U.S. 951 (2014). As further discussed below, the *Purcell* principle applies here— temporarily enjoining the qualifying deadline and the Senate maps gravely harms the State, risks voter confusion, and undermines the integrity of Tennessee's elections.

Likewise, the Tennessee Supreme Court has long recognized the compelling nature of the State's interest in the integrity of the election process. *See City of Memphis*, 414 S.W.3d at 103 (collecting cases).

As the Deputy State Election Coordinator and the Election Administrators for Shelby, Wilson and Knox Counties testified, they need the time between the April 7, 2022 qualifying deadline and the deadline mandated by federal law to accurately prepare and timely mail out the ballots to military voters and, that if the April 7, 2022 qualifying deadline

15

were moved, they would not be able to mail military ballots out as required by federal law.  (*See* App. 324-349.)

They further testified that moving the April 7, 2022 qualifying deadline will make it difficult for them to timely and accurately prepare for the August Election as their work preparing for that election becomes unnecessarily hasty, risking the accuracy of the election.  For example, the voting machines used in the August election must be programmed for early voting and for election day.  The voting machines used for early voting must be programmed with all the ballot styles in a particular county, while the machines used on election day must be programmed with the ballot styles for each individual precinct in which they will be used.  Once the voting machines have been programmed, pursuant to Tenn. Code Ann. § 2-9-105(b), notice must be given to the chairs of the county executive committees of the political parties and to independent candidates stating where and when the machines will be tested, and then public testing of the voting machines must be conducted.  Once again, though, the county election commissions cannot begin to program their voting machines until after the withdrawal and party certification deadlines, the election commission candidate certification vote, and the ballots are built and approved.  (*See* App. 324-349.)

The trial court's decision to extend the qualifying deadline to May 5, 2022, throws this process into disarray.  Now the withdrawal and disqualification deadlines are May 12, 2022, and the appeal deadline and state executive committee review deadline are May 19, 2022.  The injunction leaves only 21 business days for the county election administrators to do everything that is necessary to have ballots ready to

16

mail to military and overseas voters by the federal deadline. And at least in the case of Shelby County—that is simply not enough time to draft over 1,000 different ballot styles, have them approved at a publicly-noticed county election commission meeting, have them approved by the State Coordinator of Election, seek multiple competitive bids for the printing the ballots, have the funds approved at another publicly-noticed county commission meeting, and then actually print the ballots and prepare them for mailing to military and overseas voters. (*See* App. 324-332.)

Yet nowhere in the trial court's order is there any discussion of these harms to Defendants and the public interest. Such a glaring omission alone merits a stay, even if the context were not so important as statewide elections.

Moreover, not only does the trial court's injunction threaten noncompliance with federal law and the disenfranchisement of military and overseas voters, but the injunction also creates total chaos and uncertainty for candidates for political party state executive committees. Pursuant to Tenn. Code Ann. § 2-13-103, members of the state executive committee for each party are elected at the regular August primary election immediately before the election of the Governor—and these members are elected based on the state senatorial districts. Specifically, "[i]n each party's primary its voters *in each senatorial district* shall elect one (1) man and one (1) woman as members of the state executive committee for terms of four (4) years beginning on September 15, following their election." Tenn. Code Ann. § 2-13-103(b) (emphasis added). And since candidates for party executive committee members

17

must qualify by noon on April 7, 2022, *see* Tenn. Code Ann. § 2-5-101(a)(2), candidates have already qualified based on the Senate districts as apportioned in SB 0780. But now with the trial court's order enjoining SB 0780, not only do these candidates have no idea whether they have qualified in the right senatorial district or not, the injunction does not extend the qualifying deadline for these candidates.

In sum, "elections are complex and election calendars are finely calibrated processes, and significant upheaval and voter confusion can result if changes are made late in the process." *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, --- F.Supp.3d ---, 2022 WL 633312, at *74, 76 (N.D. Ga. Feb. 28, 2022) (finding that "due to the mechanics of State election requirements, there is insufficient time to effectuate remedial relief for purposes of the 2022 election cycle"). Courts have further recognized that "the public interest would not be served by a chaotic, last-minute reordering of Senate districts. It is best for candidates and voters to know significantly in advance of the petition period who may run where. *Favors v. Cuomo*, 881 F.Supp.2d 356, 371 (E.D. N.Y. 2012); *see also Alpha Phi Alpha Fraternity Inc.*, 2022 WL 6333312, at *76 (finding that "with the timeline of candidate qualifying set to begin in days, it would not serve the public interest or the candidates, poll workers, and voters to enjoin use of the Enacted Plans and begin the process of putting new plans in their place for the 2022 election cycle"); *Diaz v. Silver,* 932 F.Supp. 462, 466–68 (E.D.N.Y.1996) (three-judge court) (in redistricting challenge, holding that, even assuming that plaintiffs had shown likelihood of success on the merits, the public interest weighed against an injunction because there was

18

insufficient time before the election to create a new plan, and cases cited therein).

Thus, when an election is too close for the State realistically to be able to implement the necessary changes before the election, courts have found injunctive relief to be inappropriate. *See e.g., Williams v. Rhodes,* 393 U.S. 23, 35 (1968) ("[A]t this late date it would be extremely difficult, if not impossible, for Ohio to provide still another set of ballots. Moreover, the confusion that would attend such a last-minute change poses a risk of interference with the rights of other Ohio citizens, for example, absentee voters."). And specifically, within the context of redistricting, the Supreme Court has stated:

> [U]nder certain circumstances, *such as where an impending election is imminent and a State's election machinery is already in progress,* equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, *a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles.*"

*Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (emphasis added).

# CONCLUSION

For the reasons stated, Defendants' emergency motion to stay pending extraordinary appeal should be granted. The order of the trial court enjoining Defendants from conducting elections for State Senate districts as apportioned by SB 0780 and extending the qualifying deadline for Senate candidates until May 5, 2022 should be stayed and ultimately reversed.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/Alexander S. Rieger
ALEXANDER S. RIEGER (BPR 029362)
Senior Assistant Attorney General

JANET M. KLEINFELTER (BPR 013889)
Deputy Attorney General

PABLO A. VARELA (BPR 29436)
Assistant Attorney General
Public Interest Division
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408

JOHN L. RYDER #08258
2700 One Commerce Square
Memphis, TN 38103
Tel: (901) 525-1455
Fax: (901) 526-4084
jryder@harrisshelton.com

20

JACOB R. SWATLEY #37674
6060 Primacy Parkway, Suite 100
Memphis, TN 38119
Tel: (901) 525-1455
Fax: (901) 526-4084
jswatley@harrisshelton.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by U.S. Mail, postage prepaid, and by electronic transmission, on the following counsel of record on this 7th day of April 2022:

David W. Garrison
Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
(615) 252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

Josh Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville TN, 37203
(615) 983-8900
john@spragenslaw.com

/s/*Alexander S. Rieger*
ALEXANDER S. RIEGER

21