Exhibit H to *Hale v. Lee* Complaint

**IN THE CHANCERY COURT OF TENNESSEE**
**FOR THE TWENTIETH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| AKILAH MOORE, | ) | |
| TELISE TURNER, and | ) | |
| GARY WYGANT, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | CASE NO. _____ |
| | ) | |
| | ) | |
| BILL LEE, Governor, | ) | |
| TRE HARGETT, Secretary of State, | ) | |
| MARK GOINS, Tennessee Coordinator | ) | |
| of Elections; all in their official | ) | |
| capacity only, | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Over the course of approximately two weeks in January 2022, the Tennessee General Assembly engaged in an unprecedented reapportionment of voters, redrawing state House and Senate maps to ensure maximum partisan advantage for the incumbent Republican supermajority. Redistricting decisions were made largely out of view of the public and largely without input from representatives of the minority party. These one-sided decisions denied voters any real opportunity to participate in – much less stop – fundamental changes to the process through which Tennessee voters choose their elected representatives.

Crucially for purposes of this lawsuit, the Tennessee General Assembly supermajority and Governor Bill Lee ignored the plain, unambiguous text of the Tennessee Constitution in order to enact their partisan redistricting scheme. They did so in two ways: *first*, by dividing more counties than necessary to create House districts with roughly equal populations, and *second*, by numbering

1

state senatorial districts nonconsecutively. These actions both contravene the language of the Tennessee Constitution.

Regardless of the supermajority's motives, the Tennessee General Assembly's and Governor's redistricting maps are facially unconstitutional according to the text of our state's founding document. The above-named Plaintiffs – on behalf of all voters of Tennessee – file this action seeking a swift declaration and injunction requiring that the Tennessee General Assembly and Governor immediately adopt maps that conform with the Tennessee Constitution.

## INTRODUCTION

1.      This lawsuit challenges the Tennessee General Assembly's recent reapportionment of the Tennessee House of Representatives and Tennessee Senate for violating two provisions of the Tennessee Constitution.

2.      First, the legislature's reapportionment of the House of Representatives divides more counties than necessary to ensure that all districts have roughly equal populations.

3.      Second, the legislature's reapportionment of the Senate fails to consecutively number the four senatorial districts included in Davidson County.

4.      County Divisions: The Tennessee Constitution prohibits legislators from dividing individual counties when creating multi-county legislative districts, and the Fourteenth Amendment to the federal Constitution requires the creation of legislative districts with roughly equal populations. The Tennessee Supreme Court has reconciled these two provisions by holding that the General Assembly must create as few county-dividing districts as is necessary to ensure that all legislative districts contain roughly equal populations.

5.      The General Assembly's reapportionment of the House of Representatives violates this constitutional mandate by creating significantly more county-dividing House districts than

2

necessary to maintain districts with roughly equal populations. The newly-enacted House apportionment plan crosses 30 county lines, despite the fact that significantly fewer county divisions could have been achieved while also maintaining roughly equal populations in each district. The legislative history illustrates this constitutional violation, as one alternate map submitted to the legislature contained just 23 county divisions, while also achieving closer population parity than the plan that the General Assembly approved. The General Assembly's failure to reduce county divisions in its House plan violates the Tennessee Constitution.

6.       <u>Senate District Numbering</u>: When a single county contains more than one senatorial district, the Tennessee Constitution requires the districts in that county to be numbered consecutively. This requirement ensures that half of a large county's senatorial districts will be on the ballot in presidential election years and half of a large county's senatorial districts will be on the ballot in gubernatorial election years, given that even-numbered districts are on the ballot in presidential election years and odd-numbered districts are on the ballot in gubernatorial election years.

7.       The General Assembly's new Senate map creates four senatorial districts within Davidson County, including three districts that are entirely within Davidson County and a fourth district that includes a portion of Davidson County along with all of Wilson County. The General Assembly numbered these districts 17, 19, 20, and 21, ensuring that three districts will be on the ballot during gubernatorial elections and just one district will be on the ballot during presidential elections. Before enacting this map, an amendment was proposed that would have corrected this deficiency by properly numbering Davidson County's senatorial districts. The General Assembly rejected this amendment.

3

8.      The General Assembly's Senate apportionment map violates the Tennessee Constitution's express requirement that senatorial "districts shall be numbered consecutively" in counties having more than one senatorial district. Tenn. Const. art. II, Sec. 3.

9.      These constitutional violations can be, and should be, corrected before the August 2022 legislative primary elections. This Court should provide the General Assembly with fifteen days to enact new apportionment plans that correct these violations, as required by T.C.A. § 20-18-105(a). If the General Assembly fails to enact such new maps by the Court's deadline, the Court should then "impose an interim districting plan," as authorized by T.C.A. § 20-18-105(b). Such interim districting plan would only apply to the 2022 legislative election cycle. *Id.*

## JURISDICTION AND VENUE

10.      This matter should be heard by a three-judge panel pursuant to T.C.A. § 20-18-101, *et seq.*, because it challenges the constitutionality of a "statute that apportions or redistricts state legislative" districts.

11.      The empaneled three-judge court has jurisdiction pursuant to T.C.A. § 20-18-101, *et seq.*

12.      The empaneled three-judge court has jurisdiction to grant the injunctive and declarative relief sought herein pursuant to T.C.A. § 20-18-105 and Tenn. R. Civ. P. 65.

13.      Venue is proper in the Twentieth Judicial District, and before a three-judge panel seated therein, pursuant to T.C.A. § 20-18-102 and Tennessee Supreme Court Rule 54 because Plaintiff Moore resides in Davidson County, Tennessee.

## PARTIES

14.      Plaintiff Akilah Moore is a resident of Davidson County in the State of Tennessee. Ms. Moore is registered to vote in Davidson County, Tennessee.

15. Plaintiff Telise Turner is a resident of Shelby County in the State of Tennessee. Ms. Turner is registered to vote in Shelby County, Tennessee.

16. Plaintiff Gary Wygant is a resident of Gibson County in the State of Tennessee. Mr. Wygant is registered to vote in Gibson County, Tennessee.

17. Defendants in this action are:

   a. Bill Lee, Tennessee Governor, who holds office pursuant to Article III of the Tennessee Constitution, having been duly elected by the citizens of the State of Tennessee.

   b. Tre Hargett, Tennessee Secretary of State, who holds office pursuant to Article III, Section 17 of the Tennessee Constitution. Mr. Hargett, as Secretary of State, appointed Mr. Goins as Tennessee Coordinator of Elections, and has unfettered authority to terminate Mr. Goins from that position.

   c. Mark Goins, Tennessee Coordinator of Elections, who is appointed by the Secretary of State pursuant to T.C.A.§ 2-11-201. Mr. Goins is charged with obtaining and maintaining "uniformity in the application, operation and interpretation of the election code," and acts under the authority of the Tennessee Secretary of State. *Id.*

18. Defendants are sued in their official capacity only, and not individually.

## LEGAL BACKGROUND

19. The Tennessee Constitution requires the General Assembly to reapportion both houses of the Assembly after "each decennial census made by the Bureau of Census of the United States is available" to the General Assembly. Tenn. Const. art. II, § 4.

5

20. The Constitution permits the General Assembly to use "geography, political subdivisions, and substantially equal population" as considerations when drawing legislative districts. Tenn. Const. art. II, § 4.

**A. The Tennessee Constitution's prohibition on county divisions in reapportionment.**

21. The Tennessee Constitution requires the General Assembly to apportion the House of Representatives into ninety-nine districts. Tenn. Const. art. II, § 5.

22. Both the Tennessee Constitution and the federal Constitution require "equality of population among districts, insofar as practicable." *State ex rel. Lockert v. Crowell*, 631 S.W.2d 702, 706-7 (Tenn. 1982) ("*Lockert I*") (citing U.S. Const amend. XIV; Tenn. Const art. II, §§ 4, 6).

23. The Tennessee Constitution additionally constrains the General Assembly's apportionment of the House of Representatives by requiring that "no county shall be divided in forming such a district." Tenn. Const. Art II, § 5.

24. The Tennessee Supreme Court reconciles these two constitutional mandates by instructing the General Assembly to adopt reapportionment plans that "cross as few county lines as is necessary to comply with the" equal population requirement of the Fourteenth Amendment to the federal constitution. *Lockert I*, at 715.

25. Thus, during every decennial reapportionment, "the State's constitutional prohibition against crossing county lines must be enforced insofar as is possible and . . . any apportion plan adopted must cross as few county lines as is necessary to comply with federal constitutional requirements." *Rural West Tenn. African-American Council, Inc. v. McWherter*, 836 F. Supp. 447, 450 (W.D. Tenn. 1993) (quoting *State ex rel. Lockert v. Crowell*, 656 S.W.2d 836, 838 (Tenn. 1983) ("*Lockert II*")).

6

26. No safe harbors protect apportionment plans from constitutional review based on the percentage of district-to-district population divergence or on the number of county divisions within the plan. *See Moore v. State of Tennessee*, 436 S.W.3d 775, 786 (Tenn. Ct. App. 2014) ("There is no safe harbor."); *Rural West Tenn. African-American Council*, 836 F. Supp. at 450 (rejecting the defendants' argument that numerical limits approved by prior court decisions analyzing prior reapportionments create safe harbors for future reapportionments).

27. For every constitutional challenge to reapportionment, therefore, the State must demonstrate that it created as few county-dividing districts as needed to ensure roughly equal populations from one district to the next.

**B. The Constitution's requirement for numbering senatorial districts.**

28. The Tennessee Constitution sets the length of individual senate terms at four years. Tenn. Const. art II, § 3 ("Representatives shall hold office for two years and Senators for four years from the day of the general election . . .").

29. The Tennessee Constitution also staggers the election of senatorial districts, such that approximately half of Tennessee's Senate seats are up for election every two years. *Id.* ("in the first general election after adoption of this amendment senators elected in districts designated by even numbers shall be elected for four years and those elected in districts designated by odd numbers shall be elected for two years.").

30. As a result, approximately half of Tennessee's Senate districts are up for election every two years, with the Senate's 17 odd-numbered districts up for election during Tennessee's gubernatorial election cycle, and the Senate's 16 even-numbered districts up for election during the national presidential election cycle.

7

31.     For counties whose populations are large enough to be divided between more than one Senate district, the Tennessee Constitution requires the General Assembly to number those districts consecutively.  Tenn. Const. art II, § 3 ("In a county having more than one senatorial district, the districts shall be numbered consecutively."); *Lockert I* at 715 ("constitutional standards which must be dealt with in any plan include contiguity of territory and consecutive numbering of districts.").

32.     The Constitution's consecutive-numbering requirement entitles the citizens of more heavily populated Tennessee counties, like the citizens of Tennessee itself, to elect approximately half of their Senators every two years.

## FACTUAL BACKGROUND

33.     The Tennessee General Assembly completed its latest decennial reapportionment of the House of Representatives through its enactment of Senate Bill 0779, Pub. Cha. 598 ("SB 0779").

34.     The Tennessee Senate passed SB 0779 on January 26, 2022, with a vote of 23 in favor and 6 opposed.

35.     The Tennessee House of Representatives passed SB 0779 on January 24, 2022, with a vote of 70 in favor and 27 opposed.

36.     One Republican legislator voted against SB 0779, and no Democratic legislator voted in favor of SB 0779.

37.     Representative David Byrd of Waynesboro, a Republican who represents House District 71, joined Democrats in voting against SB 0779.  Under the enacted map, District 71 will comprise four counties, three of which – Lawrence, Hardin, and Maury – are divided.

38.     Tennessee Governor Bill Lee signed SB 0779 on February 6, 2022.

8

39. The legislative districts enacted by SB 0779 are depicted on the General Assembly's website at the link footnoted to this paragraph.[1]

40. The Tennessee General Assembly completed its latest decennial reapportionment of the Senate through its enactment of Senate Bill 0780, Pub. Cha. 596 ("SB 0780").

41. The Tennessee Senate passed SB 0780 on January 20, 2022, with a vote of 26 in favor and 5 opposed.

42. The Tennessee House of Representatives passed SB 0780 on January 24, 2022, with a vote of 71 in favor and 26 opposed.

43. No Republican legislator voted against SB 0780, and no Democratic legislator voted in favor of SB 0780.

44. Tennessee Governor Bill Lee signed SB 0780 on February 6, 2022.

45. The legislative districts enacted by SB 0780 are depicted on the General Assembly's website at the link footnoted to this paragraph.[2]

### A. SB 0779 creates more county-dividing House districts than necessary to ensure approximately equal populations.

46. The 2020 census identified 6,910,840 people as the total population of Tennessee.

47. By dividing the state's total population among the state's ninety-nine House districts, each House district would have contained 69,806 people if every House district contained an exactly equal population.

48. The United States Supreme Court and the Tennessee Supreme Court recognize, however, that rational state policy, such as maintaining the integrity of traditional county and city

---

[1] Website of the Tenn. General Assembly -
https://wapp.capitol.tn.gov/Apps/fml2022/search.aspx
[2] Website of the Tenn. General Assembly -
https://wapp.capitol.tn.gov/Apps/fml2022/search.aspx

9

boundaries, can justify deviations from mathematical perfection in drawing legislative districts. Both Courts have held that the actual populations apportioned to individual legislative districts can deviate somewhat from the equal-population ideal without violating the Fourteenth Amendment's equal-population requirement.

49. The House map created by SB 0779 includes a range of districts whose populations deviate from the equal population ideal in a range from -4.82% to 5.09% with a total variance of 9.91%. The average deviation from the ideal population across all districts is 3.3%.

50. The enacted House map also divides 30 counties in the creation of multi-county districts. The following thirty counties are divided in the plan: Anderson, Bradley, Carroll, Carter, Claiborne, Dickson, Fentress, Gibson, Hamblen, Hardeman, Hardin, Hawkins, Haywood, Henderson, Henry, Jefferson, Lawrence, Lincoln, Loudon, Madison, Maury, Monroe, Obion, Putnam, Roane, Sevier, Sullivan, Sumner, Williamson, and Wilson.

51. The General Assembly did not endeavor to create, or succeed in creating, a plan that divides as few counties as is necessary to ensure roughly equal populations across all of the House districts.

52. During the legislative reapportionment process, State Representative Bob Freeman proposed an alternative House map with only 23 county divisions. This alternate proposal included a range of districts whose populations deviated from the equal population ideal in a range from -4.74% to 4.98% with a total variance of 9.72%. The average deviation from the ideal population across all districts was just 2.2%.[3]

---

[3] This alternate proposed map can be accessed online at the following link:
https://davesredistricting.org/maps#viewmap::706539fb-f439-4d8c-9df8-7a48c6473a30

10

53.     This alternate proposed House map divided seven fewer counties than the enacted House map while achieving a smaller total population variance and a superior average deviation from the ideal district population across all districts.

54.     This alternate proposed House map also divided substantially fewer political subdivisions than the enacted map, as the enacted map divides at least 65 political subdivisions and the alternate proposed House map divided just 18 political subdivisions.[4]

55.     This alternate proposed House map demonstrates that the enacted House map violated more county lines than necessary without achieving substantially equal district populations.

56.     The General Assembly acted in bad faith by failing to ensure that the House map enacted by SB 0779 complied with these constitutional mandates.

**B.     SB 0780 does not number Davidson County's senatorial districts consecutively.**

57.     In the decade since the last decennial apportionment, Davidson County has been represented by four Senators. Three of these senatorial districts are wholly within Davidson County, and one district contains a portion of Davidson County, as well as Sumner and Trousdale Counties.  These four senatorial districts are numbered 18, 19, 20, and 21.

58.     SB 0780 also creates four senatorial districts within Davidson County.  Three of these districts are also wholly within Davidson County, and one district includes a portion of Davidson County as well as all of Wilson County.

59.     SB 0780 numbers these four senatorial districts 17, 19, 20, and 21.

---

[4] The Constitution permits the General Assembly to use "geography, political subdivisions, and substantially equal population" as considerations when drawing legislative districts. Tenn. Const. art. II, § 4.

11

60. On January 18, 2022, Senator Jack Johnson, who was presenting to the Judiciary Committee the bill including the Senate district plan, said "It is my understanding that when possible…when you have two districts in a county, those districts have to be consecutively numbered, and they must be, one be odd and one be even, so they're not up in the same cycle…" When pressed on why Davidson County's Senate district numbers were not consecutive, Johnson continued, "Quite frankly there was no possible way that made sense, without disrupting the other criteria that we had to satisfy, to get those numbers consecutive in Davidson County."

61. Yet, in every other multi-district county, including Sevier, Knox, Hamilton, Rutherford, Montgomery, Williamson and Shelby, SB 0780 correctly applied consecutive numbering to each county's multiple senatorial districts.

62. During a Senate session on January 20, 2022, Senator Jeff Yarbro proposed an amendment to the improperly-numbered map. Senator Yarbro's amendment would have corrected this constitutional deficiency by numbering the Davidson County Senate districts as they have been numbered since the last reapportionment: 18, 19, 20, and 21. *See* SA 0467.[5] The plan within the amendment resolved the constitutional numbering issue without disturbing the term of any sitting member of the Senate. Additionally, the plan divided fewer counties, eight versus nine in the enacted map; and achieved a superior average variance across all districts 1.4% versus 2.3% in the enacted map.[6]

63. The Senate majority tabled this proposed amendment by a vote of 26-5.

---

[5] This alternate proposed map can be accessed online at the following link: https://davesredistricting.org/join/47f2f87a-e98d-4913-9a81-0e08a61e5391
[6] The Tennessee Constitution also prohibits dividing counties to form Senate districts. Tenn. Const. art II, § 6. Thus, Senate apportionment plans must also create districts that cross as few county lines as is necessary to comply with equal populations.

# CAUSES OF ACTION

## COUNT I
## VIOLATIONS OF THE TENNESSEE CONSTITUTION

## EXCESSIVE DIVISION OF COUNTIES IN THE HOUSE OF REPRESENTATIVES

64. Plaintiffs hereby incorporate all previous paragraphs as if fully set forth herein.

65. The Tennessee Constitution, interpreted by the Tennessee Supreme Court alongside the federal Constitution, requires the General Assembly to adopt reapportionment plans that "cross as few county lines as is necessary to comply with the" equal population requirement of the Fourteenth Amendment to the federal constitution. *Lockert I*, at 715.

66. The House of Representatives apportionment map enacted by the General Assembly via SB 0779 divides 30 counties in forming House districts, even though the population changes reflected in the 2020 census data permit the House of Representatives to be apportioned with far fewer county-dividing districts.

67. The House Redistricting Committee reviewed, and rejected, an alternate reapportionment plan that would have divided seven fewer counties and that would have divided the population between districts more evenly than the approved plan.

68. By failing to adopt a reapportionment plan for the House of Representatives that crossed as few county lines as necessary to comply with equal population constitutional mandates, SB 0779 violates the Tennessee Constitution.

69. To ensure that this unconstitutional House map does not apply to the August 2022 primary elections and the November 2022 general elections, the Court should expeditiously provide the General Assembly with fifteen days during which to remedy these constitutional defects, as required by T.C.A. § 20-18-105(a). If the General Assembly fails to do so by the Court-

13

imposed deadline, the Court should expeditiously impose an interim districting plan, which plan will apply only to the 2022 election cycle, as required by T.C.A. § 20-18-105(b).

## COUNT II
## VIOLATIONS OF THE TENNESSEE CONSTITUTION

### SENATORIAL DISTRICT NUMBERING IN DAVIDSON COUNTY

70. Plaintiffs hereby incorporate all previous paragraphs as if fully set forth herein.

71. The Tennessee Constitution requires that senatorial districts be consecutively numbered in counties having more than one senatorial district. Tenn. Const. Art II, § 3.

72. The Senate apportionment map enacted by the General Assembly via SB 0780 numbers Davidson County's four senatorial districts 17, 19, 20, and 21.

73. The Senate rejected an amendment that would have apportioned the Senate with Davidson County's districts consecutively-numbered, with one fewer county division, and with a smaller average district-to-district population variance.

74. By failing to number Davidson County's four senatorial districts consecutively, SB 0780 violates the Tennessee Constitution.

75. To ensure that this unconstitutional Senate map does not apply to the August 2022 primary elections and the November 2022 general elections, the Court should expeditiously provide the General Assembly with fifteen days during which to remedy these constitutional defects, as required by T.C.A. § 20-18-105(a). If the General Assembly fails to do so by the Court-imposed deadline, the Court should expeditiously impose an interim districting plan, which plan will apply only to the 2022 election cycle, as required by T.C.A. § 20-18-105(b).

14

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

A. Declare that SB 0779 violates the Tennessee Constitution by dividing more counties in the House of Representatives reapportionment plan than necessary to comply with the equal-population requirement of the Fourteenth Amendment to the United States Constitution;

B. Declare that SB 0780 violates the Tennessee Constitution by failing to consecutively number the senatorial districts in Davidson County;

C. Enjoin Defendants, as well as their agents and successors in office, from enforcing or giving any effect to the boundaries of the House of Representatives and Senate districts as drawn in SB 0779 and SB 0780, including an injunction barring Defendants from conducting any further elections under the enacted maps;

D. Provide the General Assembly with fifteen days during which to remedy these two constitutional defects;

E. In the event that the General Assembly fails to remedy these two constitutional defects by the Court-imposed deadline to do so, impose interim apportionment maps that remedy these two constitutional defects and that will apply only to the 2022 Tennessee legislative election cycle;

F. Extend the April 7, 2022 filing deadline for prospective legislative candidates as needed to ensure the enactment or imposition of the new legislative maps prior to the filing deadline; and

G. Grant such other or further relief the Court deems appropriate, including but not limited to an award of Plaintiffs' attorneys' fees and reasonable costs.

Dated: February 23, 2022

Respectfully submitted,

/s/ Scott P Tift
David W. Garrison (BPR # 024968)
Scott P. Tift (BPR # 027592)
Barrett Johnston Martin & Garrison, LLC
414 Union Street, Suite 900
Nashville, TN  37219
(615) 244-2202
(615) 252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com


John Spragens (BPR # 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Counsel for Plaintiffs*

16