# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

VICKI HALE, EARLE FISHER, )
TELISE TURNER, HEDY WEINBERG, )
STEPHEN COHEN, CHARLES 'CHAZ' )
MCIVER MOLDER, CHANEY )
MOSLEY, JUSTIN PEARSON, and the )
TENNESSEE DEMOCRATIC PARTY, )
                                     )

*Plaintiffs*,             )      **CASE NO. 3:26-cv-00603**
                                     )

**v.**                            )      **JUDGE CAMPBELL**
                                     )

BILL LEE, Governor, )
TRE HARGETT, Secretary of State; )
MARK GOINS, Tennessee Coordinator )
of Elections; all in their official capacity )
only, )
                                     )

*Defendant*.            )

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND FOR HEARING

Plaintiffs respectfully submit this Supplemental Brief to apprise the Court of factual developments since Plaintiffs filed their Complaint and Motion for Injunctive Relief. **These facts demonstrate the increasing likelihood of irreparable harm faced by Plaintiffs**.[1]

---

[1]      Plaintiffs urge the Court to issue a Temporary Restraining Order at this time, to enjoin the Act until such time as the Court can adjudicate Plaintiffs' request for a Preliminary Injunction. The Court is authorized to do so even if a three-judge court must be convened to adjudicate a Preliminary Injunction. *See* 28 U.S.C. § 2284(b)(3) ("A single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure except as provided in this subsection. **He may grant a temporary restraining order on a specific finding, based on evidence submitted, that specified irreparable damage will result if the order is not granted, which order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the district court of three judges of an application for a preliminary injunction**." (emphasis added.)

On May 7, 2026, Plaintiffs filed a Complaint for Injunctive Relief (Doc. 1) seeking to enjoin Defendants from implementing and enforcing HB 7001, HB 7002, HB 7003, and HB 7005 ("the Act"). On May 8, 2026, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") (Doc. 11). Later that day, this Court issued an Order (Doc. 20) requiring Defendants to respond on Tuesday, May 12, 2026 and asking for supplemental briefing from Defendants as to whether 28 U.S.C. § 2284 requires a three-judge court to be empaneled in this case. Plaintiffs were given until May 14, 2026 to respond to any briefing submitted by Defendants regarding the empaneling of a three-judge court. On May 8, 2026, this Court also issued another Order (Doc. 22) setting a telephonic conference with the parties on Monday, May 11, 2026. Plaintiffs submit this Supplemental Brief to apprise the Court of new, relevant information before the telephonic conference.

### I. Candidates Must Send Notice of Candidacy by Noon on May 15, 2026

This Court has ordered briefing from parties up until May 14, 2026, but under the Act, the qualifying deadline for candidates is noon on May 15, 2026. Candidate Plaintiffs can either (a) continue to seek election in the same numerical district in which they qualified (notwithstanding geographic changes that have removed three of the Candidate Plaintiffs from their qualifying districts), which requires no notice to the state election coordinator; (b) provide written, notarized notice to the coordinator of elections that they are running in a different district; or (c) provide written, notarized notice to the coordinator of elections that they are withdrawing. (*See* Compl. Ex. M, ECF Page ## 220-221 (amending Tenn. Code Ann. § 2-16-204(a)). **Plaintiff Candidates must make this choice by noon on May 15, 2026**.

Plaintiff Candidates respectfully request injunctive relief as far in advance of May 15, 2026 as practicable. Without an injunction, Candidate Plaintiffs must publicly commit to running (or not

running) in one of the new congressional districts. This state-mandated communication requires Candidate Plaintiffs to implicitly endorse the Act's deadlines and district maps at the same time that the Candidate Plaintiffs are seeking to enjoin the constitutional harms posed by the Act during the 2026 election cycle. The Court should issue a Temporary Restraining Order well before May 15, 2026, to prevent the Act from compelling Candidate Plaintiffs to speak a preference for running in a congressional districts they challenge herein as unconstitutional for the 2026 election cycle. (*See* contemporaneously-filed Supplemental Declarations of Representative Stephen Cohen and  Chaz Molder.)

### II. County Election Commissions are Rushing to Comply with the Act and Fear Increased Voter Confusion

Since filing, Plaintiffs have also learned that County Election Commissions are actively working to implement the changes imposed by the Act. (*See* contemporaneously-filed Declarations of Tiffany Perkins and Kenneth S. Byrd.) On May 7, 2026, shortly after the Act was passed, Defendant Secretary of State, Tre Hargett, sent new guidance to elections officials outlining changes imposed by the Act.  (Byrd Dec. ¶ 5.) State and county elections officials have been working to effectuate these changes since then. (Byrd Dec. ¶¶ 4-5)

County election commissions normally have months to implement changes and prepare for August and November elections. (Perkins Dec. ¶ 6; Byrd Dec. ¶7.) Updating voter precincts and district lines is a meticulous, time-consuming, and iterative process involving multiple cross-checks and safeguards. In particular, mapping and balloting software must be carefully checked to ensure each voter in a precinct divided across two or more congressional districts receives the correct ballot. (Perkins Dec. ¶ 6; Byrd Dec. ¶7.) Under the Act, election commissioners are tasked with performing this complex work in just a few weeks.

In her Declaration, Montgomery County Election Commissioner Tiffany Perkins warns:

"While the process of implementing changes to ballots, GIS maps, precincts, and identifying (and potentially remedying) split precincts is already underway, it is entirely unclear how the Commission is going to be able to comply with the new map. **In particular, I am extremely concerned that the Commission will be unable to prepare all the ballot permutations by the statutory deadline.**" (Perkins Dec. ¶ 4.) (emphasis added). Davidson County Election Commissioner, Kenneth Byrd worries that under the compressed timeline "military and overseas voters may not be able to participate in the August 2026 congressional primary as a result of the mid-cycle redistricting enacted by the General Assembly, and signed by the Governor, last week." (Byrd Dec. ¶ 13.)

In Davidson County alone, the Act creates 44 new "split precincts"—precincts divided across two or more congressional districts, where not all voters receive the same ballot—of Davidson County's 178 total precincts." (Byrd Dec. ¶ 6.) Split precincts prove particularly challenging because voters in the same precinct will require different ballots. (*Id*. at ¶¶ 7- 8.)

In 2022, when this process was *not* compressed, the Davidson County Election Commission experienced issues with voters in split precincts. "[A]n error in communication between the state Election Commission, DCEC, and other state and local government departments led to 3,637 voters being potentially misassigned to the wrong congressional district during early voting and (after identification of the problem) 1,537 voters still being misassigned as of Election Day." (Byrd Dec. ¶ 9.) As a result, "437 voters receiv[ed] incorrect ballots" and "an unknown number of voters" did not vote "as a result of confusion during the voting period." (Byrd Dec. ¶ 9.)

County election commissioners are afraid that the Act's compressed timeline will also greatly increase voter confusion, poll worker confusion and the likelihood that voters will receive

the wrong ballots. (Perkins Dec. ¶ 8; Byrd Dec. ¶¶ 11-12.) The Act's removal of voter notification requirements *astronomically* increases these risks. In 2022, per state law, county election commissions were required to notify voters of the changes to their districts and precincts via mail. (Perkins Dec. ¶ 7; Byrd Dec. ¶ 11.) Under the Act, county election commissions must merely post the notice on their website—if one exists. The Act changes the congressional district of nearly 1.5 million voters in Tennessee—none of whom may receive written notice of these changes. (Burgos Dec. ¶ 14.)

Commissioner Perkins does not believe that Mongomery County voters will receive direct notice of their updated congressional district despite receiving this notice in 2022. "If voters do not receive such notice," Ms. Perkins warns, "I am confident that the November 2026 election will see mass and unprecedented voter confusion" which will "substantially interfere with the ability of Montgomery County voters to exercise their fundamental right to vote." (Perkins Dec. ¶ 8.) "[E]ven if voters do receive such notice," she continues, "I believe that there will still be substantial confusion and effective voter disenfranchisement based on the considerable changes to the election map and the concomitant changes to ballots, precincts, and voting locations." *Id*.

Commissioner Byrd similarly warns that the lack of written notice will cause "mass and unprecedented voter confusion and substantially interfere with the ability of Davidson County voters to exercise their fundamental right to vote." (Byrd Dec. ¶ 12.) "[E]lderly voters in particular will be impacted by the lack of notice because they do not regularly access the internet." (Byrd Dec. ¶ 11.)

Plaintiffs filed their Complaint seeking injunctive relief on May 7—mere hours after the Act was enacted. Plaintiffs then filed their motion for a Temporary Restraining Order early the next morning, affording the Court an immediate opportunity to prevent Defendants from taking

5

step to enforce the Act. Each passing day increases the concrete steps taken to implement the Act, thereby increasing the likelihood of significant voter confusion and increasing the irreparable harm Plaintiffs will suffer.

**III. The Act Appears to Target Candidate Plaintiffs and Imposes Severe, Non-Neutral Burden on Plaintiffs' Rights**

Now that more details about the Act's maps have become available to Candidate Plaintiffs, it is evident that the legislature did not just draw a map that disadvantaged Democrats generally. Instead, the Act targeted Candidate Plaintiffs Cohen, Pearson and Molder specifically—named individuals who had qualified months earlier to appear on the August 6, 2026 ballot, who were polling favorably, and whose specific votes, statements, campaign platforms, and public positions were known to the legislature at the time of enactment. (*See* contemporaneously-filed Declaration of Robert Burgos at ¶¶ 8-10.)

The Act's target is unmistakable from the map itself. With one exception, the Act mapped every incumbent candidate in Tennessee's congressional delegation into a district that preserves his or her incumbency status. (Burgos Dec. ¶¶ 10,11.) Candidate Plaintiff Cohen alone among sitting members of Congress has been displaced by the Act from the district where he previously qualified and currently represents constituents. (*Id.* ¶ 11.) Candidate Plaintiffs Molder and Pearson—who before the Act appeared to have a chance at winning their races—have likewise been drawn out of their previous districts based on their residential addresses, while Candidate Plaintiff Chaney Mosley (another Democrat but polling less favorably) has been left undisturbed. (Burgos Dec. ¶ 13.) These are not incidental effects of neutral line-drawing based on voter history or registration to create districts that generally favor Republicans. *Cf. Rucho v. Common Cause*, 588 U.S. 684 (2019). The Act's map is the product of a legislature that knew exactly where these

6

individuals lived and acted accordingly to damage Candidate Plaintiffs' campaigns that were already underway. (Burgos Dec. ¶ 12) (finding the line between Congressional District 5 and Congressional District 9 drawn just a few blocks from Rep. Cohen's residential address).

Candidate Plaintiffs have standing to challenge this injury. The Supreme Court recently confirmed that candidates possess a concrete and particularized interest in the integrity and legality of the electoral process. *Bost v. Illinois State Bd. of Elections*, 146 S. Ct. 513 (2026). An unlawful election rule can injure a candidate in several ways: it might cause him to lose the elections, require him to expend additional resources, or decrease his vote share. *Bost*, 146 S. Ct. at 519. The injury here is not just that Candidate Plaintiffs might lose because the map favors Republicans—it is that the rules of the race have been re-written mid-campaign and long after the close of the qualification process specifically to damage *their* existing campaigns. (Molder Dec. ¶ 6) (describing harm to campaign caused by Act). Every other congressional candidate in Tennessee is running a 100-meter race (including fellow Democrat Chaney Mosely), but the Act targeted three specific Candidates mid-race and forced them to run 105 meters instead. *Id*. at 521.

Candidate Plaintiffs' previously acquired ballot access and previously formed associational bonds have been stripped away and broken by the Act without a compelling state interest in doing so. Under *Anderson*, "[I]t is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." *Anderson v. Calabrezze*, 60 U.S. 780, 789 (1983) (invalidating Ohio's candidate deadlines because they targeted candidates of newer and smaller parties); *see also Bullock v. Carter*, 405 U.S. 134, 144 (1972) (invalidating expensive candidate filing fees partially because they burdened lower-income voters).

A law that discriminates based on content instead of neutral factors "severely burdens

voting rights." *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998). A law is not content neutral if it burdens "voters based on the content of protected expression, party affiliation, or inherently arbitrary factors such as race, religion, or gender"; burdens "voters based on their views on any of the substantive issues of the day, such as taxes or abortion"; or, is based on "historical bias against incumbent politicians or their supporters." *Miller*, 144 F.3d at 922 (internal citations omitted); *but cf. Rucho v. Common Cause*, 588 U.S. 684 (2019) (finding claims that redistricting decisions to pack or crack groups of voters based on partisan indicia to obtain partisan advantage not subject judicial review

. The Act appears to discriminate on nearly <u>all of these bases</u> and is therefore not content-neutral and poses a severe burden on Plaintiffs' rights.

This is not merely partisan redistricting, this is erasing specific, named candidates from the ballots where they previously qualified to appear and have spent time, efforts, and considerable amounts of money in cultivating supporters—a cognizable injury under *Anderson* and *Bost*. Indeed, this is not a *de minimus* harm: if Candidate Plaintiffs chose to run for the numerical district in which they previously qualified and campaigned—come Election Day, they will not meet the voter residency requirements and **will not even be able to vote for themselves**.

Given the increased risk of irreparable harm to their constitutional rights, Plaintiffs emphatically urge the Court to grant Plaintiffs' TRO. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (establishing any loss of constitutional rights is presumed an irreparable injury).

Dated: May 10, 2026

Respectfully submitted,

<u>/s/ David W. Garrison</u>
**DAVID W. GARRISON (No. 24968)**
**SCOTT P. TIFT (No. 27592)**
**JOSHUA A. FRANK (No. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Ave North
Nashville, TN 37203
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
<u>dgarrison@barrettjohnston.com</u>
<u>stift@barrettjohnston.com</u>
<u>jfrank@barrettjohnston.com</u>

**John Spragens (No. 31445)**
Spragens Law PLC
915 Rep. John Lewis Way S., Suite 100
Nashville, TN 37203
Telephone: (615) 983-8900
Facsimile: (615) 682-8533
<u>john@spragenslaw.com</u>

*Attorneys for Plaintiffs*

9

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of this *Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and for Hearing* was filed electronically with the Clerk's office and served upon Defendants using the Court's CM/ECF system on May 10, 2026, through their counsel of record as indicated below:

Zachary L Barker
Andrew D. Denning
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 532-4098
Zachary.Barker@ag.tn.gov
Andrew.Denning@ag.tn.gov

/s/ David W. Garrison
DAVID W. GARRISON
**BARRETT JOHNSTON**
  **MARTIN & GARRISON, PLLC**
