**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| VICKI HALE, EARLE FISHER, TELISE TURNER, HEDY WEINBERG, STEVEN COHEN, CHARLES 'CHAZ' MCIVER MOLDER, CHANEY MOSLEY, JUSTIN PEARSON, and the TENNESSEE DEMOCRATIC PARTY, | ) ) ) ) ) ) | No. 3:26-cv-00603 CHIEF JUDGE CAMPBELL |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | |
| BILL LEE, Governor, TRE HARGETT, Secretary of State; MARK GOINS, Tennessee Coordinator of Elections; all in their official capacity only, | ) ) ) ) ) | |
| *Defendants.* | ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF APPLICATION OF 28 U.S.C. §2284**

## INTRODUCTION[1]

Pursuant to this Court's request, Defendants file this brief addressing the threshold question of "whether this case must be heard and decided by a district court of three judges pursuant to 28 U.S.C. §2284." Dkt. 20, Order. Plaintiffs ask this Court to enjoin the use of Tennessee's newly enacted congressional districts on First and Fourteenth Amendment grounds. Dkt. 1, Compl. ¶¶75-87. Because Plaintiffs' action is one "challenging the constitutionality of the apportionment of congressional districts," federal law requires a three-judge district court. 28 U.S.C. §2284(a).

## ARGUMENT

**I.A.** Federal law requires district courts composed of three judges in limited circumstances. Those circumstances include constitutional challenges in redistricting cases:

> A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed *challenging the constitutionality of the apportionment of congressional districts* or the apportionment of any statewide legislative body.

28 U.S.C. §2284(a) (emphasis added). That requirement has important implications for appeals. If the three-judge court enters an order with "the practical effect of enjoining use of the current [redistricting] plans in this year's elections"—as Plaintiffs seek here—there is an appeal as of right immediately to the Supreme Court. *Abbott v. Perez*, 585 U.S. 579,

---

[1] Defendants conferred with Plaintiffs regarding Defendants' position that a district court of three judges is required. Plaintiffs indicated they do not object to the request to convene a three-judge court.

1

599 (2018); *see* 28 U.S.C. §1253 ("Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.").

Paradigmatic cases requiring a three-judge court are those challenging congressional district lines as racially gerrymandered or malapportioned, in violation of federal constitutional requirements. *See, e.g.*, *Alexander v. S.C. Conf. of the NAACP*, 602 U.S. 1, 15 (2024); *Wesberry v. Sanders*, 376 U.S. 1, 2 (1964). Federal law also required three-judge courts for challenges to redistricting plans alleged to violate First Amendment associational rights or other constitutional rights before the Supreme Court rejected such claims as nonjusticiable in *Rucho v. Common Cause*, 588 U.S. 684, 692 (2019). *See, e.g.*, *Gill v. Whitford*, 585 U.S. 48, 56, 66 (2018); *Benisek v. Lamone*, 585 U.S. 155, 157-58 (2018). Beyond these usual circumstances, a three-judge court might also be convened for other constitutional claims, such as a Guarantee Clause claim arising from the *failure* to redistrict. *Adams v. Clinton*, 26 F. Supp. 2d 157 (D.D.C. 1998), *sum. aff'd*, 531 U.S. 941 (2000) (summarily affirming three-judge court's decision on the merits).

**B.** Here, the Court must decide whether Plaintiffs' complaint "challeng[es] the constitutionality of the apportionment of congressional districts …." 28 U.S.C. §2284(a). It does. While Plaintiffs' First Amendment claims are not the paradigmatic racial gerry-

2

mandering or malapportionment claims triggering §2284(a), Plaintiffs nevertheless challenges the "constitutionality of the apportionment of congressional districts." 28 U.S.C. §2284(a).

The subject of Plaintiffs' complaint is a recently enacted election law—chiefly, Tennessee's newly redrawn congressional districts. *See* 2026 Tenn. Pub. Ch. 3, 2d Extra. Sess. §1 (enacted 2026 Plan). Although that complaint refers collectively to "the Act" (*e.g.*, Dkt. 1, Compl. ¶¶5, 12, 20-23, 79-80, 85-87), every reference to "the Act" could be rewritten as "Tennessee's 2026 congressional districts." *See id.* ¶29 (alleging "the Tennessee General Assembly reapportioned most of Tennessee's nine Congressional districts by enacting … the Act"); *id.* ¶34 ("The Act redraws most of Tennessee's nine congressional districts."); *id.* ¶79 (describing "[t]he Act's alteration of Tennessee's congressional districts").

Plaintiffs' complaint challenges those newly redrawn congressional districts on constitutional grounds. Invoking the First and Fourteenth Amendments, Plaintiffs claim that the recent "alteration of Tennessee's congressional districts and the August 6, 2026, election calendar and rules will wreak chaos …." *Id.* Invoking alleged First Amendment associational rights, Plaintiffs describe "associational bonds" they formed "within their Districts, relying on Tennessee's existing Congressional District map." *Id.* ¶84. They fault the State for "upend[ing] the map," *id.* ¶86, and contend certain candidates were intentionally "drawn out of their previous districts based on their residential addresses," Dkt. 24, Pls.' Supp. Br. at 6. They allege they "will have to expend more resources identifying,

3

associating with, and campaigning to voters who live in the newly-enacted district." Dkt. 1, Compl. ¶¶20-23. They contend the 2026 Plan "severely burdens Plaintiffs' right to associate by summarily breaking Plaintiffs' already-formed associational bonds for the upcoming election" in violation of the First and Fourteenth Amendments. *Id.* ¶¶85-87.

Section 2284(a) plainly applies to those constitutional claims and requested relief. Plaintiffs contend that relief is warranted because the recent "apportionment of congressional districts" violated the First and Fourteenth Amendments to the Constitution. 28 U.S.C. §2284(a); Dkt. 1, Compl. ¶¶75-87. And they want this Court to restore the "associational bonds" from "the [pre]existing Congressional District map," *id.* ¶84, with a temporary and permanent injunction reverting back to the 2022 districts. *See id.* ¶¶12, 80; *id.* p.22 (Prayer for Relief). At bottom, these allegations "challeng[e] the constitutionality of the apportionment of congressional districts." 28 U.S.C. §2284(a).

**C.** Despite those allegations, Plaintiffs' complaint maintains §2284(a) does not apply. Dkt. 1, Compl. ¶15. Plaintiffs contend their claims do not "challenge the apportionment decisions" in the 2026 Plan. *Id.*; *see also* Dkt. 12, Mem. in Support of Mot. for Prelim. Inj. at 3 (similar); *but see* Dkt. 24, Pls.' Supp. Br. at 6-8 (faulting redrawn boundaries for CD-5 and CD-9 for their effect on incumbent and other candidates). But §2284(a) does not turn on whether Plaintiffs challenge particular "apportionment decisions," however Plaintiffs might define that. *Contra* Dkt. 1, Compl. ¶15. It turns on whether Plaintiffs challenge "the apportionment" of Tennessee's congressional districts. 28 U.S.C. §2284(a). The

4

complaint does just that. It alleges that the redistricting violated Plaintiffs' right to associate in ways little different than the First Amendment theories presented in *Gill*, a three-judge panel case challenging Wisconsin statehouse districts. *See Gill*, 585 U.S. at 80-82 (Kagan, J., concurring) (discussing Plaintiffs' right-to-associate theory). Plaintiffs allege they "will have to expend more resources identifying, associating with, and campaigning to voters who live in the newly-enacted district." Dkt. 1, Compl. ¶¶20-23. They compare the "existing Congressional District map" to the newly enacted one and allege the latter "summarily break[s] Plaintiffs' already-formed associational bonds." *Id.* ¶¶84-85. They fault the district boundaries themselves for moving CD-9's incumbent and other primary candidates into a different district. Dkt. 24, Pls.' Supp. Br. 6-8. And they seek an order requiring elections to proceed with the 2022 districts, not the 2026 districts. Dkt. 1, Compl. ¶¶12, 80. Just like other redistricting cases requiring a three-judge court, the practical effect of such an order would bar Tennessee "from using the districting plans now in effect to conduct this year's elections." *Abbott*, 585 U.S. at 594.

**D.** History confirms a three-judge court is required. Federal law historically required three-judge courts to preside over myriad actions seeking injunctions on constitutional grounds. *See Shapiro v. McManus*, 577 U.S. 39, 41 (2015) (discussing 28 U.S.C. §2281). At the turn of the century, Congress created the three-judge-court mechanism "'to expedite litigation of great and general importance.'" David P. Currie, *The Three-Judge District Court in Constitutional Litigation*, 32 U. Chi. L. Rev. 1, 7 (1964) (quoting 36 Cong. Rec. 1679

5

(1903)). After *Ex parte Young*, 209 U.S. 123 (1908), the potential for injunctions prohibiting the enforcement of state laws proliferated. In response, Congress required three-judge courts for cases seeking temporary or permanent injunctions to enable more deliberation in the trial court followed by a direct appeal to the Supreme Court. *See* Currie, *supra*, 32 U. Chi. L. Rev. at 7-8; *see id.* at 16 (describing "the particular vice of the injunction" as "stop[ping] the machinery of enforcement" of state law, sometimes erroneously, "until [the court] could be reversed on appeal"); *see also* S. Rep. 94-204 at 2 (describing *Ex parte Young* origins). Over time, requiring a three-judge court in all such cases became too burdensome, S. Rep. 94-204 at 3, so Congress repealed the requirement for nearly all cases "except those involving reapportionment," *id.*

Nothing in that history suggests the line that Plaintiffs would seemingly draw here—between their case challenging an entire redistricting plan as a First and Fourteenth Amendment violation versus others challenging a particular district as racially gerrymandered, for example. In both cases, Plaintiffs seek an injunction precluding the use of a redistricting plan on constitutional grounds. And in both cases, Congress has preserved the requirement of a district court of three judges. 28 U.S.C. §2284(a).

**II.** The only exception is for "wholly insubstantial and frivolous claims." *Shapiro*, 577 U.S. at 45 (quotation marks omitted); *accord Goosby v. Osser*, 409 U.S. 512, 518 (1973) (filing a "constitutionally insubstantial" claim did not require a three-judge court). This Court may deem claims to be "obviously frivolous" and dismiss them without convening

a three-judge court. *Shapiro*, 577 U.S. at 45 (quotation marks omitted). But if claims are not "obviously frivolous," they must be heard by a three-judge court. In *Shapiro*, for instance, voters challenged Maryland's 2011 redistricting plan as unconstitutionally burdening "their First Amendment right of political association." *Id.* at 42. A single district judge dismissed the action for failure to state a claim. *Id.* The Supreme Court reversed, concluding that even if plaintiffs' complaint would fail at the motion-to-dismiss stage, a three-judge court was required to make that determination. *Id.* at 45-46. So too here, while Plaintiffs' claims are similarly unlikely to survive a motion to dismiss, the three-judge court must make that decision, unless the Court deems the claims "obviously frivolous." *Id.* at 45 (quotation marks omitted).

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court notify the Chief Judge of this Circuit so that a district court of three judges may be convened to hear Plaintiffs' constitutional challenge. *See* 28 U.S.C. §2284(b)(1).

7

Dated: May 12, 2026

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Zachary L. Barker*
ZACHARY L. BARKER (BRP #035933)
*Senior Assistant Attorney General*

ANDREW DENNING (BPR #042208)
*Assistant Attorney General*
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 532-7400
Zachary.barker@ag.tn.gov
Andrew.denning@ag.tn.gov
(615) 532-4098

TAYLOR A.R. MEEHAN (PHV pending)
BRYAN K. WEIR (PHV pending)
OLIVIA C. ROGERS (PHV pending)
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
taylor@consovoymccarthy.com
bryan@consovoymccarthy.com
orogers@consovoymccarthy.com

*Counsel for Defendants*

8