# EXHIBIT

# 1

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

VICKI HALE, EARLE FISHER, TELIZE TURNER, )
HEDY WEINBERG, STEPHEN COHEN, CHARLES )
'CHAZ' MCIVER MOLDER, CHANEY MOSLEY, )
JUSTIN PEARSON, and the TENNESSEE )
DEMOCRATIC PARTY, )
                               )
    Plaintiffs, )
                                 )
v. )       No. 3:26-cv-00603
                                 )       Chief Judge Campbell
BILL LEE, Governor of Tennessee, )
TRE HARGETT, Secretary of State of Tennessee, )
MARK GOINS, Tennessee Coordinator of Elections; )
all in their official capacity only, )
                                 )
    Defendants. )

## DECLARATION OF ANDREW DODD

STATE OF TENNESSEE   )
                       )
COUNTY OF DAVIDSON   )

I, ANDREW DODD, having first been duly sworn according to law, makes oath upon my personal knowledge as follows:

1. I am over the age of eighteen, and I am competent to testify on the matters set forth herein.

2. I am an employee of the Division of Elections, Tennessee Department of State, and have been since 2011. I became an Assistant Coordinator of Elections in July 2023 and continue to serve in that role. I am also a licensed attorney and have been licensed in Tennessee since 2011.

3. The State Coordinator of Elections is appointed by and serves at the pleasure of the Tennessee Secretary of State. The Coordinator of Elections serves as the chief administrative election officer of the State, and his statutory duties are set forth in Tenn. Code Ann. § 2-11-202. As Assistant Coordinator, I am charged with assisting the Coordinator with these statutory duties, which include, among other things, the following duties:

- Advise election commissions, primary boards, and administrators of elections as to the proper methods of performing their duties;
- Authoritatively interpret the election laws for all persons administering them;
- Furnish instructions for election officials as to their duties in the conduct of elections and copies of election laws manual and updating materials to the election commissions, primary boards, and administrators; and
- Provide materials for and conduct training programs for persons administering the election laws.

4. On May 7, 2026, the Tennessee General Assembly adopted Public Chapter No. 3 which revised Tennessee's nine (9) U.S. House congressional districts. The primary election for these congressional districts is August 6, 2026. Since the deadline for candidates to qualify for this primary election has already passed, Public Chapter No. 2 "grandfathers" in candidates already qualified and provides a special qualifying period for additional candidates for U.S. House of Representatives to qualify. Specifically, Public Chapter No. 2 provides that already qualified candidates have three options:

- Run in the district that has the same district number that appeared on the candidate's original nominating petition;
- Run in a new district that has a different district number than what appeared on the nominating petition by filing a notarized statement with the Coordinator of Elections by noon on May 15; or
- Withdraw by filing a notarized statement with the Coordinator of Elections by noon on May 15.

Any existing qualified candidate who takes no action will automatically remain qualified in the district listed on their original nominating petition.

5. For additional candidates who desire to qualify, Public Chapter No. 2 provides a special qualifying period that began as of the effective date of the Act through noon on May 15. A person can qualify as a candidate for a congressional district by filing a nominating petition with the signatures of twenty-five voters registered in a county that is wholly or partially within that district within the special qualifying period.

6. The political parties retain their ability to remove candidates who do not meet the bona fide requirements under their rules; however, any determination that a newly qualified candidate should be removed from the ballot must be filed with the Coordinator of Elections by noon on May 17. Candidates who are disqualified by a political party may not appeal the party's decision.

7. The Division of Elections acknowledges that the revised congressional districts and special qualifying period will make it more difficult for our staff and for the county election commissions to meet deadlines and prepare for the August 6 election. The State has appropriated significant funds to meet those deadlines.

8. While this not the first time the Division has opined on meeting election deadlines, there are several significant factual differences between the present circumstances and possible election

deadlines that were the subject of 2022 litigation regarding the Tennessee State Senate redistricting plan.

9.      First, the Act provides a May 15 qualifying deadline and no deadline for a candidate to withdraw thereafter; a May 17 noon deadline for parties to disqualify a candidate, and no appeal process—meaning that counties could potentially begin preparing their ballots and Division review could begin as soon as May 18. That is earlier than the timeline contemplated in the 2022 litigation.

10.     Second, the ballot for the August 2026 election is not nearly as large as the ballot was for the August 2022 election. The 2022 ballot included all five Supreme Court Judges (retention question); eleven Court of Appeals judges (retention question); ten Court of Criminal Appeal judges (retention question); all trial court judges, which may have involved contested races (circuit, chancery, criminal and probate); all District Attorneys General, which may have involved contested races, and all Public Defenders, which may have involved contested races. As most of these offices all have eight (8) year terms, they are not on the August 2026 ballot unless there is a vacancy.

11.     Third, the plan at issue today is different than the plan that was at issue in 2022. In 2022, the challenged State Senate Plan redistricted ninety-five (95) counties into thirty-three (33) Senatorial districts. The 2026 congressional plan redistricts the counties into nine (9) U.S. House congressional districts. And while the plan redistricts all ninety-five counties, under the new redistricting map, boundaries in fifty-three (53) counties remain unchanged, and in thirty-two (32) counties wholly in one district, the only change is a change in district numbers. In one (1) county (Campbell County), the boundary did not change, but voters who were previously in the 3rd congressional district are now in the 6th congressional district. In total, forty-three (43) counties are required to make updates to make changes to boundaries and/or district numbers.

12.     Additionally, the General Assembly is currently not in session, so there are no additional laws anticipated concerning election administration. While we are also assisting counties with the registration of individuals with a previous felony conviction, the Tennessee General Assembly enacted legislation in 2025 that significantly changed the process for a person with a felony conviction to have his or her voting rights restored. That process that relies heavily on a judicial process has reduced the time our office and the county election commissions must spend in determining whether a person with a previous felony conviction is eligible to register to vote.

13.     Finally, perhaps the most significant difference between 2022 and the present situation is that when the General Assembly enacted Public Chapter No. 4, it appropriated significant funds ($3,154,700.00) to assist county election officials in meeting deadlines and performing their duties for the August election. This funding will allow election officials to:

- Pay for overtime and/or hire additional staff
- Pay vendors for services performed on an expedited basis
- Pay for mailing notices to voters, if any
- Pay for miscellaneous items such as additional training, signage, voter education, etc.

None of this funding was available in 2022, meaning that the counties would have had to fund all these items, which may have put the county in a position of needing to spend money that was not appropriated or running the risk of incomplete or inaccurate work.

14. The Division of Elections is committed to performing its statutory duties in preparing for the August election and assisting the county election commissions to appropriately prepare for that election. The performance of those duties has already begun. The Division of Elections has already sent a memo to the counties asking them to begin planning for the changes. Also, upon passage of the Act, the Division immediately sent a memo to the county election commissions outlining the steps they should take to implement the revised congressional districts. The Division also prepared and sent candidate qualifying information to the county election commissions. A copy of this memo is attached.

15. The Division also worked with the GIS staff in the Division of Property Assessments in the Comptroller's office. The GIS staff has mapping software that allows a voter to look up their address and determine which district they are in. The Division of Elections worked with GIS staff to ensure that it published the redistricted map on its website and that the "voter look-up" function is available. The map and a link to the "voter-look-up" function was also published on the Division's website on the same day the law was enacted.

16. The Division sent letters by overnight delivery on Thursday, May 7, via Federal Express to all fifty-three (53) candidates who had previously qualified, advising them of the revised congressional districts and their options. A copy of this letter is attached. Fifty-two (52) out of fifty-three (53) letters were delivered by Friday, May 8. The remaining letter (to Congressman Scott DesJarlais) was delivered Monday, May 11. Division staff also personally called all candidates to ensure that they were fully informed.

17. Division of Elections staff reviewed the residential address provided on each qualified candidate's nominating petition. Thirty-seven (37) out of fifty-three (53) candidates reside in the same district in which they originally qualified. Sixteen (16) candidates listed below now reside in a different district. Two (2) candidates, Joyce E. Neal and Wendell "Wells" Blankenship, have filed notarized statements to run in their new districts instead of the districts in which they originally qualified as of Tuesday, May 12.

| Original District | Candidate | Party | Revised District |
|---|---|---|---|
| 4th | Victoria Broderick | Democratic | 9th |
| 5th | Charlie Hatcher | Republican | 9th |
| 5th | Mike Cortese | Democratic | 4th |
| 5th | Chaz Molder | Democratic | 9th |
| 5th | Joyce E. Neal | Democratic | 4th |
| 5th | Lowell Andre Reynolds | Independent | 7th |
| 6th | Natisha Brooks | Republican | 7th |
| 6th | Lore Bergman | Democratic | 7th |
| 6th | Andrew J. Koontz | Independent | 7th |
| 8th | Leonard Perkins | Democratic | 5th |

| Original District | Candidate | Party | Revised District |
|---|---|---|---|
| 8th | Pamela Jeanine "P." Moses | Independent | 5th |
| 9th | Steve Cohen | Democratic | 5th |
| 9th | DeVante R. Hill | Democratic | 8th |
| 9th | Justin J. Pearson | Democratic | 5th |
| 9th | Wendell "Wells" Blankenship | Independent | 8th |
| 9th | Dennis Clark | Independent | 8th |

18. When Public Chapter No. 3 was signed on Thursday, May 7, county election commissions began taking the necessary steps required under the public chapter:

- By early Thursday evening, GIS staff from the Comptroller's Division of Property Assessments had provided lists to eleven (11) of twelve (12) counties split by congressional district boundaries totaling 831,241 affected addresses based on address points contained in 911 data on file with the office. (No data was needed for Jefferson County since its boundaries and district numbers did not change.)
- Counties have begun to incur costs related to redistricting. For example, Shelby County has reported their IT staff worked overtime over the Mother's Day holiday weekend.
- County election commissions have reported 540,711 updates to voter records across thirty-one (31) of the forty-three (43) counties required to make updates by the end of the day on Tuesday, May 12. Fifty-two (52) counties have no updates to make under this plan.

19. During the special qualifying period, I am aware of thirty (30) petitions that have been issued by the Division of Elections and county election commissions to candidates who had not previously qualified. Four (4) petitions have been filed by these candidates with the Coordinator of Elections as of the close of business on May 12. Candidates have until noon on Friday, May 15, to file.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

ANDREW DODD

05/13/2026

Date