# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

VICKI HALE, EARLE FISHER, )
TELISE TURNER, HEDY WEINBERG, )
STEPHEN COHEN, CHARLES 'CHAZ' )
MCIVER MOLDER, CHANEY )
MOSLEY, JUSTIN PEARSON, and the )
TENNESSEE DEMOCRATIC PARTY, )
                )
      *Plaintiffs*, )     **CASE NO. 3:26-cv-00603**
                )
**v.** )     **JUDGE CAMPBELL**
                )
BILL LEE, Governor, )
TRE HARGETT, Secretary of State; )
MARK GOINS, Tennessee Coordinator )
of Elections; all in their official capacity )
only, )
                )
      *Defendants*. )

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

This case is unique because the Tennessee General Assembly waited until two months ***after*** the March 10 candidate qualifying deadline to draw new congressional districts, and to reset the candidate qualifying deadline (and withdrawal deadline) to May 15, tomorrow. This represents a material difference between this case and the cases relied upon by the State:

In the *Abbott* case, the Texas legislature drew new districts at some point prior to the District Court's November 18, 2025, decision enjoining the new maps. And, that was well before the December 8, 2025, candidate qualifying deadline and the March 3, 2026, congressional primary.[1] *See LULAC v. Abbott*, 809 F. Supp. 3d 502, 516 (W.D. Tex. 2025)*, rev'd sub nom. Abbott v. LULAC*, No. 25-845, 2026 WL 1127246 (U.S. Apr. 27, 2026).

---

[1]    *See* Texas Secretary of State's website publishing Important Election Dates (https://www.sos.state.tx.us/elections/voter/important-election-dates.shtml)

1

Similarly, in the *Rucho* case, the North Carolina legislature drew new districts in 2016, and the district court enjoined the new maps on January 9, 2018, well before the February 28, 2018, candidate qualifying deadline and the May 8, 2018, primary election.[2] *See Common Cause v. Rucho*, 279 F. Supp. 3d 587, 599 (M.D.N.C.), *vacated and remanded*, 585 U.S. 1012, 138 S. Ct. 2679, 201 L. Ed. 2d 1066 (2018).

Here, by redistricting two months ***after*** the candidate qualifying deadline, the super majority had the opportunity to assess the strength of the opposition party's congressional candidates, who had been exercising their First Amendment rights to speech and association for months within set congressional districts, and then impede those candidates' free speech and association by drawing them into vastly different territories than the territories they had been campaigning in for months. The General Assembly's redistricting effort was not the political gerrymandering permitted by the *Rucho* decision, where a legislature draws districts based on political partisanship demographics. The General Assembly's redistricting effort was targeted governmental retaliation against specific Candidate Plaintiffs, as well as the Voter Plaintiffs who had supported them, with the effect of infringing their First Amendment rights to speech and assembly.

If these constitutional violations, which only apply during this 2026 election, are sanctioned here in deference to a doctrine of judicial restraint that would have applied months ago but should not apply months after the candidate qualifying deadline, then the General Assembly will have license moving forward to neutralize its political opposition by violating the First Amendment rights of voters and candidates every two years by redrawing legislative districts sufficiently after the candidate qualifying deadline for the super majority to assess which

---

[2] *See https://ballotpedia.org/North_Carolina_state_legislative_Democratic_primaries,_2018*

opposition party candidates stand the greatest chance of prevailing and then to undercut those candidates' chances of success through redistricting. The Court should not allow this egregious abuse of power to result in Plaintiffs' First Amendment rights being violated this year and opening the door for the same to occur in cycle after cycle for years to come.

Initially, Plaintiffs moved this Court to set a hearing on their application for TRO (Doc. No. 11) in hopes that such a hearing would advance their effort to seek relief expeditiously; however, they have since withdrawn such request (Doc. No. 32). Both sides have briefed the Court on Plaintiffs' Motion, and both sides "have stated that they do not intend to present live testimony during the [May 20, 2026] hearing." (Doc. No. 31). Moreover, both sides have relied on sworn written testimony, and the State's testimony does not contradict Plaintiffs testimony. Plaintiffs rely upon: (1) uncontradicted testimony from State and County officials noting how redistricting so late in the election process will lead to the disenfranchisement of voters; (2) uncontradicted testimony from congressional candidates attesting to their activity protected by the First Amendment that has now been violated by the Act; and (3) uncontradicted testimony from a professional who works with voting data as to how the Act changed congressional district lines that favored candidates of one political viewpoint over others. The State relies on written testimony noting some differences between the circumstances now from the circumstances in 2022, but those differences are immaterial to the question as to whether a dramatic change in congressional district boundaries will result in the disenfranchisement of voters. [3]

---

[3] The State suggests that the Act at issue was the result of the General Assembly prioritizing the "nonracial consideration[]" of obtaining a "partisan advantage" (Doc. No. 40), but does not refute Plaintiffs' evidence that the congressional boundaries were drawn to protect Republican incumbent Representatives and to exclude the only Democratic incumbent Representative and other top performing Democratic candidates. The changes to the congressional district boundaries are not based on voters' partisan affiliation or voting history but rather based on the political viewpoints and speech of qualified candidates. The State offers no sworn testimony to the contrary.

3

The issues are fully briefed, both sides rely on sworn declarations, and neither side intends to call live witnesses at a hearing. This Court should rule on Plaintiffs' Motion for Temporary Restraining Order **today**, expeditiously, in advance of tomorrow's 12:00 p.m. candidate qualifying deadline (and candidate withdrawal deadline).

Dated: May 14, 2026

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (No. 24968)**
**SCOTT P. TIFT (No. 27592)**
**JOSHUA A. FRANK (No. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Ave North
Nashville, TN 37203
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com
jfrank@barrettjohnston.com

**JOHN SPRAGENS (No. 31445)**
SPRAGENS LAW PLC
915 Rep. John Lewis Way S., Suite 100
Nashville, TN 37203
Telephone: (615) 983-8900
Facsimile: (615) 682-8533
john@spragenslaw.com

*Attorneys for Plaintiffs*

4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this *Reply in Support of Plaintiffs' Motion for Temporary Restraining Order* was filed electronically with the Clerk's office and served upon Defendants using the Court's CM/ECF system on May 14, 2026, through their counsel of record as indicated below:

Zachary L Barker
Andrew D. Denning
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 532-4098
Zachary.Barker@ag.tn.gov
Andrew.Denning@ag.tn.gov

/s/ David W. Garrison
DAVID W. GARRISON
**BARRETT JOHNSTON**
   **MARTIN & GARRISON, PLLC**

5